126 T.C. No. 15

UNITED STATES TAX COURT

L.S. VINES, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12763-04.                    Filed May 11, 2006.

P, a lawyer for over 34 years, settled a class
action law suit during 1999 and received compensation
for his legal services.  P received approximately half
of the compensation in taxable year 1999 and half in
taxable year 2000 and reported it as ordinary income
for the respective taxable years.  P decided to leave
the practice of law and begin a business of trading
securities.  After P failed to cover a margin call, P's
brokerage accounts were liquidated on Apr. 14, 2000,
resulting in a short-term capital loss.  Throughout his
career, P relied on accountants for tax advice.  When P
filed for an extension of time to file his 1999 tax
return on Apr. 17, 2000, P did not elect the mark-to-
market method of accounting pursuant to sec. 475(f),
I.R.C., because P's accountant was not aware of the
mark-to-market election for securities traders or any
related revenue procedure.  In June 2000, P learned of
the mark-to-market election for securities traders from
a friend, obtained the citation of sec. 475(f), I.R.C.,
and learned that Rev. Proc. 99-17, 1999-1 C.B. 503,

required the election to be filed no later than the due date for the previous year's tax return; i.e., Apr. 17, 2000. P then employed a law firm to file the election and a request for relief pursuant to sec. 301.9100-3(c), Proced. & Admin. Regs. On July 21, 2000, the law firm submitted the election on P's behalf. P did not trade any securities, realize any further gains, or suffer any further losses between Apr. 17 and July 21, 2000. P's losses were exactly the same on July 21, 2000, as they were on Apr. 17, 2000. In a Private Letter Ruling, dated Dec. 5, 2001, R denied P's request for an extension of time to file the election pursuant to sec. 301.9100-3(c), Proced. & Admin. Regs. Subsequently, R determined deficiencies in tax for P's taxable years 1999 and 2000.

    Held: P is entitled to an extension of time to file his sec. 475(f), I.R.C., election pursuant to sec. 301.9100-3, Proced. & Admin. Regs. P is entitled to relief because he acted reasonably and in good faith and the interests of the Government will not be prejudiced. Accordingly, P is entitled to the benefits of sec. 475(f), I.R.C., for the taxable year 2000 as if he had timely filed the election.

David D. Aughtry, Roy J. Crawford, and Hale E. Sheppard, for petitioner.

Monica D. Armstrong, for respondent.

WELLS, Judge: Respondent determined deficiencies in tax for petitioner's 1999 and 2000 taxable years of $6,312,641 and $6,835,942, respectively.[1] The issue we decide is whether, pursuant to section 301.9100-3, Proced. & Admin. Regs., petitioner should be granted an extension of time to file a

---

[1]Respondent contends that petitioner in not entitled to certain deductions for meals and entertainment for taxable year 1999, gifts to employees for taxable year 1999, and alimony payments for taxable year 2000 all of which petitioner concedes.

section 475(f) election for his taxable year 2000.  Unless
otherwise indicated, all section references are to the Internal
Revenue Code, as amended, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated.
The parties' stipulations of fact are incorporated in this
Opinion by reference and are found as facts in the instant case.[2]
At the time of filing the petition, petitioner resided in
Birmingham, Alabama.  Petitioner is an attorney who practiced
personal injury law in Birmingham, Alabama, for approximately 34
years.  During January 1994, petitioner began representing
certain plaintiffs in a national class action lawsuit that
settled with the defendants during 1999.  Petitioner received
approximately one-half of his compensation for settling the class
action suit during the taxable year 1999 and the other half
during the taxable year 2000.  Petitioner reported net profits of
$18,520,775 and $16,966,055 from his law practice on line 29 of
Schedule C, Profit or Loss From Business, of his Forms 1040, U.S.
Individual Income Tax Return, for taxable years 1999 and 2000,
respectively.

---

[2]The instant case was tried in the Court's Electronic
(North) Courtroom where evidence was presented electronically and
certain testimony was taken by video conference.  In addition to
the usual paper format, the parties filed briefs on CD Rom.

During August 1999, petitioner established brokerage accounts with DLJdirect and Ameritrade for the purpose of investing a portion of his compensation from settling the class action suit.  Petitioner deposited $5 million in each of those accounts.  Petitioner later established a brokerage account with Terra Nova during December 1999.

During the fall of 1999, petitioner decided to wind down his law practice and begin a new career as a securities trader.  Previously, petitioner had traded in the stock market only irregularly.  Between December 1999 and January 2000, petitioner concluded the class action suit, transferred his remaining cases to other attorneys, paid off the balance of the lease of his downtown-Birmingham law office, and terminated the lease.  By late January 2000, petitioner had spent a substantial amount of money equipping and organizing one floor of his home as a securities trading office.  Based on the volume and frequency of petitioner's trading, the parties have stipulated that petitioner became engaged in the trade or business of trading securities on January 28, 2000.

Petitioner used margin borrowing as part of his securities trading strategy.  On April 14, 2000, DLJdirect forced the liquidation of petitioner's entire account and terminated petitioner's trading on account of petitioner's failure to cover a margin call after technology stocks declined sharply during

early April, 2000.  As of April 14, 2000, petitioner's net trading losses totaled $25,196,151.54.  After his account was liquidated on April 14, 2000, petitioner held no securities in his DLJdirect, Ameritrade, or Terra Nova accounts.

Throughout his career, petitioner used certified public accountants to advise him on Federal tax matters and to prepare his Federal tax returns.  J. Wray Pearce (Mr. Pearce), a certified public accountant with over 30 years of experience, had served as petitioner's business and personal accountant for over 13 years.  Mr. Pearce had visited petitioner's home several times and was very familiar with petitioner's securities trading business.  He had seen all of petitioner's trading-related computers and equipment, helped hire some of the employees in petitioner's securities trading business, and reviewed daily calculations of petitioner's securities trading.

On April 13, 2000, Mr. Pearce met with petitioner to obtain his signature on Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, for the taxable year 1999.  On April 17, 2000, petitioner timely filed Form 4868, requesting an extension until August 15, 2000, to file his return for taxable year 1999.  A section 475(f) election was not enclosed with the Form 4868.  Because Mr. Pearce did not know about the applicability of section 475(f) or any related Internal Revenue Service (IRS) revenue procedure to securities traders,

Mr. Pearce did not advise petitioner of the availability of a section 475(f) election.

On or about June 4, 2000, Dr. James G. Sullivan (Dr. Sullivan), a friend of petitioner, visited petitioner at his home. Dr. Sullivan had helped petitioner set up the computers that petitioner used to conduct his securities trading business. During Dr. Sullivan's June visit, petitioner told Dr. Sullivan that he had suffered significant losses during the first quarter of the 2000 taxable year and that, consequently, his DLJdirect account had been liquidated on April 14, 2000. Dr. Sullivan knew several professional "day traders" and informed petitioner that he might be able to deduct his security losses as ordinary losses. Before Dr. Sullivan's June visit, petitioner had no indication that petitioner might be able to claim ordinary losses for his securities trading business.

On the next day, June 5, 2000, petitioner attempted to contact another accountant, Charles E. Sellers (Mr. Sellers), regarding the possibility of deducting his losses as a securities trader. On June 6, 2000, petitioner spoke with Mr. Sellers by telephone and told him that Dr. Sullivan had suggested that petitioner might be able to deduct his losses as a securities trader as ordinary losses. At the time of petitioner's telephone conversation with Mr. Sellers, Mr. Sellers was unaware of section 475(f) and the mark-to-market election available to

securities traders.  Petitioner then spoke with Dr. Sullivan by telephone and asked Dr. Sullivan for a citation of the exact provision that would allow securities traders to deduct their losses as ordinary losses.  Dr. Sullivan checked with his day-trader contacts, who gave him a citation of section 475(f).  Dr. Sullivan relayed the citation to petitioner, who in turn relayed it to Mr. Sellers.

Mr. Sellers informed petitioner that, according to Rev. Proc. 99-17, 1999-1 C.B. 503, in order for a section 475(f) election to be effective for the 2000 taxable year, petitioner had to file the election by April 17, 2000, the due date for his 1999 tax return.  Mr. Sellers then informed petitioner that he should qualify for an extension of time within which to make the section 475(f) election under section 301.9100-3, Proced. & Admin. Regs. (section 9100 relief).[3]

Mr. Sellers recommended that petitioner hire other tax counsel to make the section 475(f) election and to request section 9100 relief.  Petitioner hired the Washington, D.C., law firm of Caplin & Drysdale to prepare and file the section 475(f) election and request for section 9100 relief.  On July 21, 2000, Caplin & Drysdale, on behalf of petitioner, submitted to respondent a "Taxpayer Election of Mark to Market Accounting Under Section 475(f)" (section 475(f) election), along with a

---

[3]Sec. 9100 relief is discussed in detail infra.

six-page letter outlining the reasons petitioner should qualify for section 9100 relief to make the section 475(f) election for the taxable year 2000. The letter also stated that petitioner would file a formal private letter ruling request. Also enclosed with the section 475(f) election and the six-page letter was a "protective" Form 3115, Application for Change in Accounting Method.

The Form 3115 stated that petitioner intended to adopt an accounting method for his new securities-trading business, not change an accounting method for an existing business. An attachment to the Form 3115 stated in pertinent part:

> The taxpayer desires to adopt a new method of accounting for securities which are held in connection with his trade or business as a trader in securities to the mark to market method of recognizing gains and losses as described in Section 475(f).

> *        *        *        *        *        *        *

> The taxpayer is not requesting any change in the accounting methods used in his trade or business as an attorney and since the year 2000 is his first year in the trade or business of trading securities he is adopting a mark to market accounting method with regard to his trade or business of trading securities.

> *        *        *        *        *        *        *

> The taxpayer does not have to make any section 481(a) adjustment because he was not engaged in the trade or business of being a trader in securities prior to the year 2000. He is adopting a mark to market method of accounting for his trade or business as a securities trader which did not begin until 2000.

> *        *        *        *        *        *        *

Based on the limited number of securities transactions in 1999 as set forth above and since [petitioner] was still engaged in the full time practice of law for all of 1999, it seems clear that he did not qualify as a trader in securities in 1999 and therefore has not adopted a method of accounting for his trade or business as a securities trader in any year prior to 2000. For this reason, there is no adjustment under section 481(a).

Caplin & Drysdale advised petitioner that he had bound himself to adopt the mark-to-market method of accounting for his trading business by filing the section 475(f) election and the protective Form 3115 and requesting section 9100 relief on July 21, 2000. On that basis, Caplin & Drysdale advised petitioner that he could resume his securities trading activities without adversely affecting his request for section 9100 relief. Mr. Sellers gave petitioner the same advice. Based on Caplin & Drysdale's and Mr. Sellers' advice, petitioner resumed his trading activities on July 26, 2000.

Between the date that petitioner should have filed his section 475(f) election, April 17, 2000, and the date petitioner actually filed his section 475(f) election, July 21, 2000, petitioner: (1) Did not purchase any publicly-traded stock; (2) did not sell any publicly traded stock; and (3) had no gain or loss from the disposition of any publicly traded stock. Thus, petitioner's losses on July 21, 2000, were exactly the same as they were on April 17, 2000.

On October 27, 2000, Caplin & Drysdale submitted to respondent on behalf of petitioner a formal private letter ruling request seeking section 9100 relief for his 2000 section 475(f) election (section 9100 relief request). Respondent required petitioner to pay a $5,000 fee to file the section 9100 relief request.

When petitioner filed his section 9100 relief request on October 27, 2000, the 2000 taxable year had not yet closed and petitioner's tax return for the 2000 taxable year was not yet due. Respondent had not imposed any accuracy-related penalty under section 6662 with respect to either the 1999 or 2000 taxable year.

On January 17, 2001, petitioner filed his Form 1040 for his 2000 taxable year, reporting all items based on the assumption that his section 9100 relief request would be granted. Petitioner reported a net loss of $26,768,761 from his securities trading business on Schedule C of his Form 1040, attached Form 8275, Disclosure Statement, regarding his section 475(f) election, and also attached a copy of the section 475(f) election filed on July 21, 2000.[4]

_____

[4]Respondent's technical case history indicates that respondent told petitioner's representative during a telephone conference on Mar. 26, 2001, that "the Form 3115 and statement are not binding on us and that he should tell the taxpayer to file a protective election for 2001." The technical case history also indicates that, during a separate telephone conference on
(continued...)

Following an adverse private letter ruling request conference on September 25, 2001, respondent's Office of Chief Counsel (Financial Institutions & Products) issued a conference report dated October 19, 2001, stating in pertinent part as follows:

> For basically administrative reasons, we were forced to allow 3½ months of hindsight, but if we had the choice, we would not have allowed one day of hindsight.
>
> *       *       *       *       *       *       *
>
> We did anticipate that taxpayers would not be able to use 9100 relief to obtain additional time to file the election.

---

[4](...continued)
Apr. 6, 2001, respondent told petitioner's representative:  "If * * * [petitioner] is not granted section 9100 relief, he has to make the election and follow the procedures for making the election for year 2001 - So [petitioner] should think about a protective election."

At the time respondent advised petitioner's representative to file a protective election for taxable year 2001, petitioner had already filed his tax return for his 2000 taxable year on Jan. 17, 2001.  On Apr. 11, 2001, petitioner filed a document captioned "Taxpayer Protective Election for Mark to Market Accounting under Section 475(f)" for taxable year 2001.

On Oct. 17, 2001, petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return.  The Form 1040X made no changes to petitioner's income or deductions but had attached to it a Form 3115, Application for Change of Accounting Method, which petitioner had not attached to the tax return he filed on Jan. 17, 2001, or the protective sec. 475(f) election he filed on Apr. 11, 2001.

The parties also dispute whether petitioner properly made a valid sec. 475(f) election for his 2001 taxable year.  We do not reach that issue because, for reasons stated below, we hold that petitioner is entitled to a sec. 475(f) election for his 2000 taxable year.

\*      \*      \*      \*      \*      \*      \*

> We would have done a regulation project if we had not believed section 301.9100-3 would prevent taxpayers from filing late elections.

\*      \*      \*      \*      \*      \*      \*

> The drafters of Rev. Proc. 99-17 did not want 9100 relief to be available for 475(f) elections.

On December 4, 2001, respondent's Office of Chief Counsel issued a section 301.9100-3, Proced & Admin. Regs., file memo stating in pertinent part as follows:

> Did the taxpayer apply for relief before the failure to make the election was discovered by the Service (see § 301.9100-3(b)(1)(i))?[5]   Yes.

\*      \*      \*      \*      \*      \*      \*

> Is the taxpayer considered to have acted reasonably and in good faith, taking into account § 301.9100-3(b)(3)(i)-(iii)?[6]

\*      \*      \*      \*      \*      \*      \*

> It is unnecessary to reach conclusions pertaining to sections 301.9100-3(b)(3)(i)-(iii) due to the taxpayer's failure to satisfy the requirements under section 301.9100-3(c)(2).[7]

---

[5]Sec. 301.9100-3(b)(1)(i)-(v), Proced. & Admin. Regs., discussed more fully below, lists five criteria, under any one of which the taxpayer is deemed to have acted reasonably and in good faith.

[6]Sec. 301.9100-3(b)(3)(i)-(iii), Proced. & Admin. Regs., discussed more fully below, lists five criteria, under any one of which the taxpayer is deemed not to have acted reasonably and in good faith.

[7]Sec. 301.9100-3(c)(2), Proced. & Admin. Regs., provides special rules for accounting method regulatory elections, which
(continued...)

On November 2, 2001, petitioner filed a Form 1045, Application for Tentative Refund, for his 2000 taxable year, claiming a $4,030,143 decrease in income tax for taxable year 1999 on account of a claimed net operating loss carryback of $9,880,708 from his 2000 taxable year.[8]

On November 2, 2001, petitioner also filed a Form 1040X, Amended U.S. Individual Income Tax Return, for his 1999 taxable year to reflect the claimed net operating loss carryback of $9,880,708 from his 2000 taxable year, as well as a net operating loss carryover of $571,238 from his 1998 taxable year. The amended return reflected a total tax of $3,049,864.

On December 5, 2001, respondent denied petitioner's section 9100 relief request in Priv. Ltr. Rul. 129057-00 (200209053), stating in pertinent part as follows:

> Because Taxpayer's request for relief is denied pursuant to section 301.9100-3(c)(2) for lack of unusual and compelling circumstance, it is unnecessary for us to consider Taxpayer's assertion that he acted reasonably and in good faith under section 301.9100-3(b), without using hindsight in requesting relief. * * *

---

[7](...continued)
presume prejudice to the interests of the Government absent unusual and compelling circumstances. The application of sec. 301.9100-3(c)(2), Proced. & Admin. Regs., is a central issue in the instant case and is discussed in greater detail below.

[8]Respondent later denied petitioner's refund request.

- 14 -

OPINION

The issue we decide is whether, pursuant to section 301.9100-3, Proced. & Admin. Regs., petitioner should be granted an extension of time to file a section 475(f) election for his taxable year 2000.  Section 475(f) provides as follows:

> SEC. 475(f) Election of Mark to Market for Traders in Securities or Commodities.--
>
> (1) Traders in securities.--
>
> (A) In general.--In the case of a person who is engaged in a trade or business as a trader in securities and who elects to have this paragraph apply to such trade or business--
>
> (i) such person shall recognize gain or loss on any security held in connection with such trade or business at the close of any taxable year as if such security were sold for its fair market value on the last business day of such taxable year, and
>
> (ii) any gain or loss shall be taken into account for such taxable year.
>
> Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under the preceding sentence.  The Secretary may provide by regulations for the application of this subparagraph at times other than the times provided in this subparagraph.

In general, section 475(f) allows a taxpayer engaged in a trade or business as a securities trader to elect the mark-to-market method of accounting.  After making the election, the taxpayer must recognize gain on or loss on any security held in connection with the securities trading business as if the security were sold for its fair market value on the last business

day of the taxable year. Any gain or loss must be taken into account in that year. Sec. 475(f)(1)(A)(i).

If a qualified taxpayer makes a section 475(f) election, the gain or loss on the sale or disposition of a security is treated as ordinary income or loss. Sec. 475(d)(3)(A)(i), (f)(1)(D). Accordingly, if petitioner is entitled to make the election, he would be able to apply and carry back his losses from his securities trading business to offset the ordinary income he received as compensation for settling the class action lawsuit. On the other hand, if a taxpayer fails to make the section 475(f) election, gain or loss from the sale or disposition of a security is treated as capital gain or loss. See secs. 1221(a) and 1222. Capital losses for individuals are subject to the capital loss limitations under section 1211(b), which provides that capital losses are allowed only to the extent of capital gains, plus $3,000. Petitioner has $35,486,830 in ordinary income from his law practice and $26,768,761 in short-term capital losses from his securities trading business.

The parties have stipulated that petitioner was engaged in a trade or business as a securities trader by January 28, 2000. Accordingly, the parties do not dispute whether petitioner is qualified to make a section 475(f) election; their primary dispute is whether petitioner should be allowed the benefit of

section 9100 relief to extend the time to make the section 475(f)

election.

Respondent relies on Rev. Proc. 99-17 sec. 5.03, 1999-1 C.B.

503, 504, which states in pertinent part as follows:

SECTION 5. PROCEDURES FOR MAKING THE MARK-TO-MARKET
ELECTIONS

*         *         *         *         *         *         *

.03 Elections effective for a taxable year beginning on
or after January 1, 1999.

(1) General procedure.  * * * for a taxpayer to
make a § 475(e) or (f) election that is effective
for a taxable year beginning on or after January
1, 1999, the taxpayer must file a statement that
satisfies the requirements in section 5.04 of this
revenue procedure.  The statement must be filed
not later than the due date (without regard to
extensions) of the original federal income tax
return for the taxable year immediately preceding
the election year and must be attached either to
that return or, if applicable, to a request for an
extension of time to file that return.  [Emphasis
added.]

Accordingly, respondent contends that, pursuant to Rev. Proc. 99-

17 sec. 503, petitioner was required to file his section 475(f)

election by April 17, 2000, the due date for his 1999 tax return.

Petitioner contends that he should be allowed the benefit of

section 9100 relief to extend the time to make the section 475(f)

election because he acted reasonably and in good faith and the

interests of the Government will not be prejudiced.[9]

---

[9]Petitioner also contends that Rev. Proc. 99-17, 1999-1 C.B.
503, is invalid and unlawful because the plain language of sec.
(continued...)

Respondent contends that petitioner should not be allowed section 9100 relief to extend the time to make the section 475(f) election because an election of the mark-to-market method of accounting under section 475(f) is an accounting method regulatory election.[10]  According to respondent, section 9100 relief is not available because section 301.9100-3(c)(2), Proced. & Admin. Regs., presumes the interests of the Government to be prejudiced, absent unusual and compelling circumstances not present in the instant case.  Respondent contends that, if petitioner is permitted an extension of time to make the section 475(f) election, it impermissibly will give petitioner the benefit of "hindsight".

The interpretation of section 301.9100-3(c), Proced. & Admin. Regs., and the parties' arguments regarding section 9100 relief create issues of first impression in this Court.  We begin

---

[9](...continued)
475(g) compels the Commissioner to issue regulations outlining the procedures for making the sec. 475(f) election, which the Commissioner did not do, and cites Zinniel v. Commissioner, 89 T.C. 357 (1987), affd. 883 F.2d 1350 (7th Cir. 1989), in support of his position.

Because we hold, for reasons stated below, that petitioner is entitled to sec. 9100 relief, we do not need to decide questions relating to the validity of the limitations set forth in Rev. Proc. 99-17, supra.

[10]See sec. 301.9100-1(b), Proced. & Admin. Regs., ("Regulatory election means an election whose due date is prescribed by a regulation published in the Federal Register, or a revenue ruling, revenue procedure, notice, or announcement published in the Internal Revenue Bulletin".).

our analysis of section 301.9100-3(c), Proced. & Admin. Regs.,

keeping in mind the following policies stated by the Secretary in

the preamble to the final regulations:

> There are two policies that must be balanced in
> formulating the standards for § 301.9100 relief.  The
> first is the policy of promoting efficient tax
> administration by providing limited time periods for
> taxpayers to choose among alternative tax treatments
> and encouraging prompt tax reporting.  The second is
> the policy of permitting taxpayers that are in
> reasonable compliance with the tax laws to minimize
> their tax liability by collecting from them only the
> amount of tax they would have paid if they had been
> fully informed and well advised.  [T.D. 8742, 1998-1
> C.B. 388, 389.[11]]

> Section 301.9100-3(a), Proced. & Admin. Regs., provides in

pertinent part as follows:

> § 301.9100-3.  Other Extensions-(a) In general.--
> * * * Requests for relief subject to this section <u>will</u>
> be granted when the taxpayer provides the evidence * *
> * to establish to the satisfaction of the Commissioner

---

[11]The Secretary also expressed this view in the preamble to
temporary/proposed sec. 301.9100 regulations, T.D. 8680, 1996-2
C.B. 194, which states:  "The regulations provide a means by
which taxpayers can be in the same position they would have been
in had they made their elections in a timely manner."

This view was also endorsed by Annette Smith, Tax
Legislative Counsel, in the hearing on temporary/proposed sec.
301.9100 regulations, T.D. 8680, 1996-2 C.B. 194, where she
stated:

> I would agree that the 9100 policy should be to try to
> put a taxpayer back in the same position they would
> have been had they made a timely election, and I think
> that policy's based on the fact that there can be
> significant consequences to a taxpayer who's qualified
> to make an election and fails to make it timely.
> [Reprinted in Tax Notes Today, 96 TNT 216-16 (Oct. 30,
> 1996).]

that the taxpayer acted reasonably and in good faith, and that the grant of relief will not prejudice the interests of the Government. [Emphasis added.]

Accordingly, the Commissioner must grant relief if the taxpayer provides evidence establishing to the Commissioner's satisfaction that two conditions are satisfied:  (1) The taxpayer acted reasonably and in good faith, and (2) the interests of the Government will not be prejudiced by granting relief.

In denying petitioner's request for section 9100 relief, respondent, in Priv. Ltr. Rul. 129057-00, stated the following:

Because taxpayer's request for relief is denied pursuant to section 301.9100-3(c)(2) for lack of unusual and compelling circumstances, it is unnecessary for us to consider Taxpayer's assertion that he acted reasonably and in good faith under section 301.9100-3(b), without using hindsight in requesting relief. * * *[12]

Respondent's contentions in the instant case are consistent with respondent's conclusions in Priv. Ltr. Rul. 129057-00.  We disagree with respondent.  We conclude that petitioner acted reasonably and in good faith and that the interests of the Government are not prejudiced by allowing petitioner to file a late election.

_____

[12]Respondent's Chief Counsel 9100 File Memo. also states: "It is unnecessary to reach conclusions pertaining to sections 301.9100-3(b)(3)(i)-(iii) [whether petitioner acted reasonably and in good faith] due to the taxpayer's failure to satisfy the requirements under sec. 301.9100-3(c)(2)."

Section 301.9100-3(b)(1), Proced. & Admin. Regs., defines

reasonableness and good faith as follows:

> (b) Reasonable action and good faith.-- (1) In
> general.-- Except as provided in paragraphs (b)(3)(i)
> through (iii) of this section, a taxpayer is deemed to
> have acted reasonably and in good faith if the
> taxpayer–
>
>> (i) Requests relief under this section before  the
>> failure to make the regulatory election is
>> discovered by the Internal Revenue Service (IRS);
>>
>> (ii) Failed to make the election because of
>> intervening events beyond the taxpayer's control;
>>
>> (iii) Failed to make the election, because after
>> exercising reasonable diligence (taking into
>> account the taxpayer's experience and the
>> complexity of the return or issue), the taxpayer
>> was unaware of the necessity for the election;
>>
>> (iv) Reasonably relied on the written advice of
>> the Internal Revenue Service (IRS); or
>>
>> (v) Reasonably relied on a qualified tax
>> professional, including a tax professional
>> employed by the taxpayer, and the tax professional
>> failed to make, or advise the taxpayer to make,
>> the election.  [Emphasis added.]

The benchmarks for reasonableness and good faith in section

301.9100-3(b)(1), Proced. & Admin. Regs., are disjunctive; i.e.,

the taxpayer need satisfy only subdivision (i), (ii), (iii),

(iv), or (v) in order to be deemed to have acted reasonably and

in good faith.  In the instant case, petitioner satisfies at

least three of the regulation's benchmarks.

Regarding section 301.9100-3(b)(1)(i), Proced. & Admin.

Regs., there is no question that petitioner requested relief

before respondent discovered the failure to make the section 475(f) election.  Regarding section 301.9100-3(b)(1)(iii), Proced. & Admin. Regs., pertaining to the exercise of reasonable diligence, we note that while petitioner had practiced law for over 30 years, he had only been in business as a securities trader for approximately 3 months at the time respondent contends he should have made his section 475(f) election; i.e., April 17, 2000.  Within a day of learning of the section 475(f) election from Dr. Sullivan, petitioner contacted a new accountant, Mr. Sellers.  Mr. Sellers was also unaware of section 475(f), but petitioner retrieved the citation of section 475(f) from Dr. Sullivan and provided it to Mr. Sellers.  Petitioner also immediately hired Caplin & Drysdale to file the section 475(f) election and request section 9100 relief.

Regarding section 301.9100-3(b)(1)(v), Proced. & Admin. Regs., which finds good faith where the taxpayer acts in reasonable reliance upon counsel, petitioner was a personal injury lawyer for over 34 years, not a tax lawyer, and relied on accountants for tax advice throughout his professional career. In relying on Mr. Pearce, petitioner had no reason to question Mr. Pearce's qualifications as a qualified tax professional.[13]

---

[13]We note that, although whether petitioner's reliance was reasonable is not an issue, sec. 301.9100-3(b)(2), Proced. & Admin. Regs., places a limit on reasonable reliance on a qualified tax professional.  A taxpayer will not be considered to
(continued...)

Mr. Pearce has over 30 years of experience in tax and accounting, has held numerous leadership positions within his field and had extensive knowledge of petitioner's trading activities and losses from those activities.

Section 301.9100-3(b)(3) provides three exceptions to the general rule stated in paragraph (b)(1) above.  A taxpayer will be deemed not to have acted reasonably and in good faith if the taxpayer:

> (i) Seeks to alter a return position for which an accuracy-related penalty has been or could be imposed under section 6662 at the time the taxpayer requests relief (taking into account any qualified amended return filed within the meaning of § 1.6664-2(c)(3) of this chapter) and the new position requires or permits a regulatory election for which relief is requested;

> (ii) Was informed in all material respects of the required election and related tax consequences, but chose not to file the election; or

> (iii) Uses hindsight in requesting relief.  If specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer, the IRS will not ordinarily grant relief.  In such a case, the IRS will grant relief only when the taxpayer provides strong proof that the taxpayer's decision to seek relief did not involve hindsight.

The first two exceptions of section 301.9100-3(b)(3), Proced. & Admin. Regs., do not apply.  The parties dispute whether

---

[13](...continued) have reasonably relied on a qualified tax professional if the taxpayer knew or should have known that the professional was not (i) competent to render advice on the election, or (ii) aware of all relevant facts.

subdivision (iii) applies; i.e., whether petitioner had the benefit of hindsight in requesting relief.

Petitioner contends that, had he been aware of its existence, he would have made the section 475(f) election on time. Petitioner further contends that, because his total losses on the day he actually filed the election were exactly the same as they would have been if he had timely filed, he did not use hindsight in requesting relief.

Respondent contends that allowing petitioner an extension of time to make the election impermissibly gives petitioner the benefit of hindsight. Respondent's brief poses the following hypothetical:

> For the securities trader who has <u>unrealized losses</u>, the decision to mark-to-market his securities is a good one. Not only can he recognize his unrealized losses at the end of the year, but those losses are also ordinary losses which can be offset against ordinary income. However, for the securities trader who has <u>unrealized gains</u> at the end of the year, he may regret the decision of electing the mark-to-market method of accounting because his unrealized gains are also accelerated and must be recognized at the end of the year as ordinary income.[14]

We reject respondent's hypothetical, as well as respondent's contention. Respondent's contention is not consistent with the plain reading of section 301.9100-3(b)(iii), Proced. & Admin.

---

[14]An implicit contention in respondent's hypothetical is that a taxpayer with unrealized gains will not make the mark-to-market election because it will result in ordinary income treatment and will instead wait for the required time to pass to get the benefit of capital gains.

Regs., which states in pertinent part: "If specific facts have changed since the due date for making the election that make the election advantageous to the taxpayer, the IRS will not ordinarily grant relief." (Emphasis added.) Accordingly, the relevant inquiry is whether allowing a late election gives the taxpayer some advantage that was not available on the due date. In the instant case, the only fact that changed after the due date for making the election was the discovery of the availability of the election itself. Petitioner conducted no trading activities and incurred no further losses between the time he should have filed the section 475(f) election and the date he actually filed the election. If a late election is allowed, petitioner will not be entitled to anything more than that to which he would have been entitled had he timely made the election. The allowance of a late election is consistent with the preamble to the regulations.

The instant case is distinguishable from Lehrer v. Commissioner, T.C. Memo. 2005-167. In that case, the taxpayers sought to make a section 475(f) election for taxable years 1999, 2000, and 2001 in taxable year 2004. The taxpayers reported $44,000 of capital gains on their 1999 return, $313,715 of short-term capital losses on their 2000 tax return, and $397,079 of short-term capital losses on their 2001 return. In 2004, the taxpayers sought to make a section 475(f) election to escape the

$3,000 capital loss limitation.  The taxpayers in <u>Lehrer</u> are the classic example of taxpayers who seek to use the benefit of hindsight.[15]  The taxpayers sought retroactively to convert their capital losses into ordinary losses several years later, with continued trading in the interim, in order to escape a deficiency and a section 6662 accuracy-related penalty.  <u>Lehrer</u> stands in marked contrast to the instant case, where petitioner filed his election in the tax year it should have been filed, only a matter of months after the due date under the revenue procedure, with no trading in the interim, and no accuracy-related penalty was determined.  In sum, we hold that petitioner did not use hindsight in requesting relief and that he acted reasonably and in good faith.

Respondent contends that the interests of the Government are deemed prejudiced pursuant to section 301.9100-3(c)(2), Proced. & Admin. Regs., which provides in pertinent part as follows:

> (2) Special rules for accounting method regulatory elections.-- The interests of the Government are deemed to be prejudiced except in unusual and compelling circumstances if the accounting method regulatory election for which relief is requested–
>
> > (i) Is subject to the procedure described in §1.4461(e)(3)(i) of this chapter (requiring the advance written consent of the Commissioner);

---

[15]The taxpayers in <u>Lehrer v. Commissioner</u>, T.C. Memo. 2005-167, did not raise the issue of sec. 9100 relief.  We held that the taxpayers failed to file within the time prescribed by Rev. Proc. 99-17, <u>supra</u>.

(ii) Requires an adjustment under section 481(a) (or would require an adjustment under section 481(a) if the taxpayer changed to the method of accounting for which relief is requested in a taxable year subsequent to the taxable year the election should have been made);

(iii) Would permit a change from an impermissible method of accounting that is an issue under consideration by examination, an appeals office, or a federal court and the change would provide a more favorable method or more favorable terms and conditions than if the change were made as part of an examination; or

(iv) Provides a more favorable method of accounting or more favorable terms and conditions if the election is made by a certain date or taxable year.

Accordingly, the interests of the Government are <u>not</u> deemed to be prejudiced in the case of an accounting method regulatory election if the provisions of section 301.9100-3(c)(2)(i), (ii), (iii), or (iv), Proced. & Admin. Regs., do not apply or, if they do, unusual and compelling circumstances are present.

Section 301.9100-3(c)(1), Proced. & Admin. Regs., defines prejudice as follows:

In general. --The Commissioner will grant a reasonable extension of time to make a regulatory election only when the interests of the Government will not be prejudiced by the granting of relief. * * *

(i) Lower tax liability.-- The interests of the Government are prejudiced if granting relief would result in the taxpayer having a lower tax liability in the aggregate for all taxable years

> affected by the election than the taxpayer would
> have had if the election had been timely made
> * * *.[16]

The interests of the Government are prejudiced if granting petitioner an extension of time to file the section 475(f) election would result in petitioner's having a lower tax liability than if petitioner had timely filed a section 475(f) election.  The parties have stipulated that between April 17, 2000, the date petitioner should have filed his section 475(f) election, and July 21, 2000, the date petitioner actually filed his section 475(f) election, petitioner did not conduct any trading activities and incurred no further gains or losses.  Accordingly, pursuant to section 301.9100-3(c)(1)(i), Proced. & Admin. Regs., there is no prejudice in the instant case because granting petitioner an extension of time to file his section 475(f) election does not result in petitioner's having a lower tax liability than he would have had if he had timely filed the election.

Respondent contends, however, that prejudice is presumed because of the special rules for accounting method regulatory

---

[16]The interests of the Government are also prejudiced if the taxable year in which the regulatory election should have been made, or any taxable years that would have been affected by the election had it been timely made, are closed by the period of limitations on assessment under sec. 6501 before the taxpayer is granted 9100 relief.  Sec. 301.9100-3(c)(1)(ii), Proced. & Admin. Regs.  That provision is not a prohibition in the instant case, as the limitations periods for all taxable years affected by the election remain open.

elections contained in section 301.9100-3(c)(2), Proced. & Admin

Regs.  The parties dispute whether section 301.9100-3(c)(2)(ii),

Proced. & Admin. Regs., applies.  Paragraph 3(c)(2)(ii) presumes

prejudice, absent unusual and compelling circumstances, if the

election "Requires an adjustment under section 481(a) (or would

require an adjustment under section 481(a) if the taxpayer

changed to the method of accounting for which relief is requested

in a taxable year subsequent to the taxable year the election

should have been made)".

Section 481(a) prescribes the rules for adjustments required

by changes in methods of accounting as follows:

> SEC. 481(a) General Rule.-- In computing the
> taxpayer's taxable income for any taxable year
> (referred to in this section as the "year of change")-
>
> (1) if such computation is under a method of
> accounting different from the method under which
> the taxpayer's taxable income for the preceding
> taxable year was computed, then
>
> (2) there shall be taken into account those
> adjustments which are determined to be necessary
> <u>solely by reason of the change in order to prevent
> amounts from being duplicated or omitted</u>, except
> there shall not be taken into account any
> adjustment in respect of any taxable year to which
> this section does not apply unless the adjustment
> is attributable to a change in the method of
> accounting initiated by the taxpayer. [Emphasis
> added.[17]]

---

[17]Sec. 1.481-1(a)(1), Income Tax Regs., contains almost identical language regarding the purpose of the adjustment under sec. 481(a).  Rev. Proc. 99-17, sec. 204, 1999-1 C.B. at 504 itself corroborates this purpose:

(continued...)

Accordingly, if a taxpayer changes his method of accounting and an amount would be duplicated or omitted because of the change, section 481(a) requires an adjustment to prevent the distortion. For example, if an accrual method taxpayer included in income for year 1 an amount which he had the right to receive, but switched to the cash method of accounting in year 2 when he actually received the amount, a section 481(a) adjustment would be necessary to prevent the same item of income from being included in 2 different tax years.

Petitioner contends that, because he adopted the mark-to-market method of accounting for his securities trading business in taxable year 2000, the first year that his securities trading business existed, and did not change from another method of accounting, no item would be duplicated or omitted, no section 481(a) adjustment is required, and therefore there is no prejudice under section 301.9100-3(c)(2)(ii), Proced. & Admin. Regs.[18]

_____

[17](...continued)
In computing taxable income, § 481(a) requires a taxpayer to take into account those adjustments necessary to prevent amounts from being duplicated or omitted when the taxpayer's taxable income is computed under a method of accounting different from the method used to compute taxable income for the preceding taxable year.

[18]Cf. sec. 301.9100-3(f), Example (4), Proced. & Admin. Regs., which provides as follows:

(continued...)

Respondent contends that petitioner ignores the following parenthetical language in paragraph 3(c)(2)(ii): "(or would require an adjustment under section 481(a) if the taxpayer changed to the method of accounting for which relief is requested in a taxable year subsequent to the taxable year the election should have been made)". Respondent contends that the parenthetical language presumes prejudice to the Government because petitioner, hypothetically, could have adopted the mark-to-market method of accounting in a year subsequent to the year he should have adopted the mark-to-market method and a section 481(a) adjustment might possibly be necessary.

Assuming arguendo that the parenthetical phrase in paragraph 3(c)(2)(ii) did apply, the interests of the Government are not deemed to be prejudiced if unusual and compelling circumstances

---

[18](...continued)
Election not requiring adjustment under section 481(a). Taxpayer D prepares D's 1997 income tax return. D is unaware that a particular accounting method regulatory election is available. D files D's 1997 return without making the election and uses another permissible method of accounting. The applicable regulation provides that the election is made on a cut-off basis (without an adjustment under sec. 481(a)). In 1998, D requests relief under this section to make the election under the regulation. If D were granted an extension of time to make the election, D would pay no less tax than if the election had been timely made. Assume that paragraphs (c)(2)(i), (iii), and (iv) of this sec. do not apply. Under paragraph (c)(2)(ii) of this section, the interests of the Government are not deemed to be prejudiced because the election does not require an adjustment under section 481(a).

are present.  Section 301.9100-3(c)(2), Proced. & Admin. Regs., plainly states:  "The interests of the Government are deemed to be prejudiced <u>except in unusual and compelling circumstances</u> if the accounting method regulatory election for which relief is requested [is one to which subdivision (i), (ii), (iii), or (iv) applies]."  (Emphasis added.)  In other words, assuming subdivision (ii) applies, unusual and compelling circumstances <u>defeat</u> the presumption of prejudice.  Respondent contends that the circumstances surrounding petitioner's failure to timely file a section 475(f) election were not unusual and compelling and did not actually cause petitioner to fail to timely file the election.

Respondent points out that the collapse of the technology stocks, the liquidation of petitioner's trading accounts, and petitioner's $25 million in losses during the first quarter of taxable year 2000 did not literally prevent petitioner from making the section 475(f) election.  Respondent further points out that petitioner failed to timely file the section 475(f) election because his accountant was unaware of the election and that ignorance of the law is no excuse.

We disagree with respondent's contention that unusual and compelling circumstances are not present in the instant case.  The Commissioner has not defined, by regulation or otherwise, unusual or compelling circumstances.  We note that the preamble

to the regulations states:  "What are unusual and compelling circumstances must be decided on a case-by-case basis in light of all applicable facts and circumstances."  T.D. 8742, 1998-1 C.B. at 390.  We briefly recount the facts of the instant case. Petitioner suffered a $25 million loss when his trading accounts were liquidated on April 14, 2000, 3 days before the date prescribed in Rev. Proc. 99-17, supra, for timely filing a section 475(f) election.  Mr. Pearce, petitioner's tax adviser who had full knowledge of petitioner's trading activities and losses and over 30 years of experience as an accountant, was unaware of the section 475(f) election for securities traders. Mr. Sellers, another accountant, was also unaware of the availability of the section 475(f) election.  As soon as petitioner learned of the existence of the section 475(f) election, he promptly employed Caplin & Drysdale to make the section 475(f) election and file a request for section 9100 relief.  Petitioner conducted no further trading activities between the date he should have filed the election and the date he actually filed the election.  We find the combination of circumstances in the instant case both unusual and compelling and conclude that the interests of the Government should not be presumed to be prejudiced even if the parenthetical phrase of section 301.9100-3(c)(2)(ii), Proced. & Admin. Regs., did apply.

In conclusion, under section 301.9100-3(c)(1)(i), Proced. &
Admin. Regs., there is no prejudice to the Government in the
instant case.  Petitioner did not realize any gains or suffer any
further losses between the time he should have filed his section
475(f) election and the date he actually filed the election.
Petitioner will be entitled to no more than he would have been
entitled to had he filed his section 475(f) election by the date
prescribed in Rev. Proc. 99-17, supra, which is precisely the
purpose of section 9100 relief:  to "permit []taxpayers that are
in reasonable compliance with the tax laws to minimize their tax
liability by collecting from them only the amount of tax they
would have paid if they had been fully informed and well
advised."  T.D. 8742, 1998-1 C.B. at 389.[19]  We conclude that
petitioner is entitled to an extension of time to file his
section 475(f) election pursuant to section 301.9100-3, Proced. &
Admin. Regs.  Petitioner is entitled to relief because he acted
reasonably and in good faith and the interests of the Government
will not be prejudiced.  Accordingly, we hold that petitioner is

---

[19]See supra note 11, and accompanying text.

entitled to the benefits of a section 475(f) election for the taxable year 2000 as if he had timely filed the election.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>