T.C. Memo. 2006-268


UNITED STATES TAX COURT


STEVEN A. AND PATRICIA A. KNISH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 323-05.                    Filed December 18, 2006.


<u>Thomas E. Brever</u> and <u>Barbara A. Olson</u>, for petitioners.

<u>David L. Zoss</u>, for respondent.


MEMORANDUM OPINION


KROUPA, <u>Judge</u>:  This matter is before the Court on the
parties' cross-motions for partial summary judgment, both filed
pursuant to Rule 121.[1]  We are asked to decide whether
petitioners and SPK, petitioners' wholly owned S corporation,

_____

   [1]All section references are to the Internal Revenue Code in
effect for the years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

made effective mark-to-market elections for 2000 or 2001 under section 475(f).  We hold that neither petitioners nor SPK made an effective election for either year.  We shall therefore grant respondent's motion for partial summary judgment and deny petitioners' motion for partial summary judgment.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioners resided in Lonsdale, Minnesota, at the time they filed the petition.

Petitioners' S Corporation

Petitioners owned and operated SPK, a road and sewer construction company incorporated in 1991.[2]  Petitioner Patricia Knish (Mrs. Knish) owned 80 percent of SPK's stock while petitioner Steven Knish (Mr. Knish) owned 20 percent of SPK's stock.

SPK, an S corporation, filed its tax returns on Form 1120S, U.S. Income Tax Return for an S Corporation, for 1996 through 2001.  Petitioners reported SPK's S corporation items on their joint tax return for each year from 1996 through 2001.

Changing SPK's Business to Securities Trading

Petitioners decided to change SPK's business in 2000.  SPK sold its operating assets and goodwill in February 2000 and made nondividend property distributions to petitioners.  Mr. Knish

---

[2]Petitioners' S corporation was originally named Knish Corp., but petitioners changed its name to SPK in 2001.  We refer to petitioners' S corporation as SPK.

then began trading securities using SPK's remaining funds and petitioners' own funds. He began trading securities in June 2000 and continued trading throughout 2001. Petitioners allocated the income, expenses, gains, and losses that resulted from the securities trading between petitioners and SPK.

Petitioners' and SPK's 1999 Tax Returns

Petitioners and SPK each timely filed a tax return for 1999 in April 2000. Neither petitioners nor SPK attached any statement to the returns electing to use the mark-to-market method of accounting under section 475(f).

Attempts To Make Mark-to-Market Elections

Petitioners and SPK each attempted in 2001 to make a mark-to-market election for their securities trading activity, intending that the elections be effective beginning in 2000. Petitioners and SPK each filed Form 3115, Application for Change in Accounting Method, with respondent and noted at the top that the forms were filed pursuant to section 301.9100-2, Proced. & Admin. Regs (section 9100). Petitioners filed their Form 3115 in October 2001, and SPK filed its Form 3115 in September 2001. Neither petitioners nor SPK submitted any other document to respondent seeking to elect the mark-to-market method of accounting.

Tax Returns for 2000 and 2001

Petitioners and SPK each timely filed their tax returns for 2000 and 2001. Petitioners and SPK each requested extensions to file their 2000 returns and timely filed them in October 2001 and

September 2001, respectively.  Petitioners and SPK attached copies of the Forms 3115 they had filed to their returns for 2000.  The returns for 2000 and 2001 reflected that petitioners and SPK each used the mark-to-market method of accounting for their securities trading activity.  Petitioners and SPK each reported ordinary losses for both years.  Petitioners reported their own ordinary losses as well as their 100-percent share of SPK's ordinary losses for both years, totaling $2,333,698 in 2000 and $2,985,149 in 2001.

Petitioners claimed a net operating loss for 2001 due to the ordinary securities trading losses.  Petitioners seek to carry this net operating loss back to tax years 1996 through 1999 pursuant to section 172.  Petitioners accordingly applied for tentative refunds for 1996, 1997, 1998, and 1999, which respondent disallowed.

Petitioners' and SPK's Requests for Letter Rulings

Petitioners and SPK both requested that respondent issue letter rulings concerning the effectiveness of their mark-to-market election under section 475(f) for 2000.  Petitioners and SPK also stated in their ruling requests that they should be granted administrative relief from a late election under section 9100.  Petitioners and SPK each withdrew their requests for letter rulings when they learned that the pending letter ruling requests would be decided adversely to them.

Deficiency Notice and Tax Court Proceedings

Respondent issued petitioners a deficiency notice for tax years 1996 through 2001. Respondent determined in the deficiency notice that the ordinary losses petitioners claimed in 2000 and 2001 from Mr. Knish's and SPK's securities trading activity were capital losses. Respondent determined that the losses were capital losses because petitioners and SPK had not made effective mark-to-market elections under section 475(f). Respondent determined alternatively that the losses were capital losses even if petitioners and SPK made effective mark-to-market elections because the securities trading activity was not a trade or business activity. Petitioners filed a timely petition.

The parties filed cross-motions for partial summary judgment on whether petitioners and SPK made effective mark-to-market elections for the securities trading activity under section 475(f).

### Discussion

Summary Judgment Standard

We are asked to decide whether it is appropriate to grant partial summary judgment. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). The Court may grant partial summary judgment on a matter concerning which there is no genuine issue as to any material

fact and a decision may be rendered as a matter of law.  See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  We conclude that there is no genuine issue of material fact regarding whether petitioners and SPK made effective mark-to-market elections for Mr. Knish and SPK's securities trading activity, and a decision may be rendered as a matter of law.

Respondent argues that petitioners and SPK failed to make effective mark-to-market elections under section 475(f) pursuant to Rev. Proc. 99-17, 1999-1 C.B. 503.  Respondent argues that petitioners' losses from the securities trading activity are therefore capital losses regardless of whether the securities trading activity was a trade or business.

Petitioners argue that as they are traders in securities, they are entitled to ordinary loss treatment for their securities trading losses in 2000 and 2001 (and their 100-percent share of SPK's securities trading losses) because they and SPK each made effective mark-to-market elections under section 475(f).

General Rules of the Mark-to-Market Accounting Method

We begin by describing the general rules of the mark-to-market accounting method.  A taxpayer engaged in a trade or business as a trader in securities may elect to recognize gain or loss on any security held in connection with the trade or business at the close of the taxable year as if the security were sold for its fair market value at yearend.  Sec. 475(f)(1)(A)(i); see Lehrer v. Commissioner, T.C. Memo. 2005-167; Chen v. Commissioner, T.C. Memo. 2004-132.  In general, gains or losses

resulting from the mark-to-market election shall be treated as ordinary income or losses. Sec. 475(d)(3)(A), (f)(1)(D). If a taxpayer is in a business as a trader in securities and makes a mark-to-market election with respect to sales of securities held in connection with his or her business, the net loss from that business will be an ordinary loss, deductible in full under section 165(c)(1). See secs. 165(a), (c), (f), 1211(b)(1); Lehrer v. Commissioner, supra; Chen v. Commissioner, supra. Conversely, if the mark-to-market election is not made, the net loss is deductible only to the extent of any capital gains plus $3,000. See secs. 165(a), (c), (f), 1211(b)(1); Lehrer v. Commissioner, supra; Chen v. Commissioner, supra.

Mark-to-Market Election Procedures

We are asked to determine whether petitioners and SPK made effective mark-to-market elections. A mark-to-market election may be made without the consent of the Secretary and, once made, applies to the taxable year for which it is made and all subsequent taxable years unless revoked with the Secretary's consent. Sec. 475(f)(3). Section 475 and the regulations do not provide procedures that specify the time and manner of making a mark-to-market election, although the Commissioner issued proposed regulations in 1999. Sec. 1.475(f)-1, Proposed Income Tax Regs., 64 Fed. Reg. 4378 (Jan. 28, 1999).

We look to the legislative history of section 475 to determine congressional intent because the statute is silent as to the procedures that must be followed to make a mark-to-market

election.  See Lehrer v. Commissioner, supra.  The legislative history indicates that the Secretary has authority to prescribe the time and manner of the mark-to-market election.  H. Rept. 105-148, at 446 (1997), 1997-4 C.B. (Vol. 1) 323, 768; see Lehrer v. Commissioner, supra.

The Commissioner has prescribed procedures detailing the requirements for a mark-to-market election pursuant to this authority.  Rev. Proc. 99-17, supra.  A taxpayer wishing to make a mark-to-market election must file a statement electing the mark-to-market accounting method no later than the due date for the tax return for the year immediately preceding the election year.  Id. sec. 5.03, 1999-1 C.B. at 504.  This statement must be attached to that tax return or to a request for an extension of time to file that return.  Id.

Petitioners and SPK argue that they made effective mark-to-market elections for 2000.  We disagree.  Petitioners and SPK were required to attach a statement electing the mark-to-market accounting method to their respective tax returns for 1999 to timely make a mark-to-market election for 2000.  Id.  Neither petitioners nor SPK attached any election statement to the 1999 return.[3]  Instead, petitioners filed their election statement in

_____

[3]Petitioners argue that the mark-to-market election procedure outlined in Rev. Proc. 99-17, 1999-1 C.B. 503, effectively eliminates any opportunity to make the election in a taxpayer's first year of securities trading.  While these petitioners may not have been able to make the election in their first year of trading, we do not find the rule invalid for this reason.  In fact, the transition rules of sec. 475 required securities dealers to identify securities excepted from the mark-
(continued...)

October 2001, and SPK filed its election statement in September 2001 with respect to their returns for 2000.  They did not attach any election statements to their returns for 1999.  The election statements they did file were each nearly 18 months late.  Accordingly, we conclude that petitioners and SPK did not make effective mark-to-market elections in compliance with Rev. Proc. 99-17, supra, for tax year 2000.

Petitioners argue in the alternative that their and SPK's ineffective attempts to make mark-to-market elections for 2000 should nevertheless be construed as valid elections for 2001.  We disagree.  Petitioners have not cited any authority for us to ignore the year in which they designated the election to be effective.  There is no basis in Rev. Proc. 99-17, supra, to construe the unsuccessful attempted mark-to-market elections for 2000 to be effective elections for 2001 instead.  Rev. Proc. 99-17, supra, requires that the statement used to make the election specify the first taxable year for which the election is

---

³(...continued)
to-market election rules very promptly after enactment of the law.  See Notice 93-45, 1993-2 C.B. 334; see also Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1001(d)(2)(B), (4)(B)(i), 111 Stat. 908.  The requirement to make the mark-to-market election before the year it is to be effective in Rev. Proc. 99-17, supra, is therefore consistent with the prospective operation of sec. 475 indicated by the transition rules' prompt identification requirements.  We also note that new taxpayers (those for which no tax return was required to be filed for the year preceding the election year) may make a mark-to-market election in the first year of their existence by placing a statement in their books and records within a certain time.  Rev. Proc. 99-17, sec. 5.03, 1999-1 C.B. at 504.  While petitioners and SPK are not new taxpayers under this provision, we note that the requirements of Rev. Proc. 99-17, supra, are not as onerous as petitioners imply.

effective.[4]  Id. sec. 5.04, 1999-1 C.B. at 505.  Petitioners' and SPK's election statements designated 2000, not 2001, as the first taxable year for which the election was to be effective. Petitioners and SPK accordingly never made an election for 2001. Instead, petitioners ask us to construe their invalid attempt to make an election for 2000 as a valid election for 2001.  We decline to do so.

Moreover, the unsuccessful attempted elections for 2000 were untimely even for tax year 2001.  Mark-to-market election statements for 2001 would have had to be filed with SPK's and petitioners' tax returns (or requests for extensions) by the due dates of petitioners' and SPK's tax returns for 2000.[5]  Id. sec. 5.03.  Petitioners and SPK each attached their Forms 3115 to their respective tax returns for 2000 that they filed in October 2001 and September 2001 pursuant to extensions.  Although petitioners and SPK each requested extensions to file their returns for 2000, they each failed to attach their Forms 3115 to their requests for extensions to file as required.  SPK's and petitioners' requests were therefore similarly untimely for 2001. See id.  We conclude that petitioners and SPK did not make effective mark-to-market elections under section 475(f) for 2001.

_____

[4]Cf. sec. 1362(b)(3) (treating an untimely S corporation election as made for the next taxable year).  There is no comparable provision in sec. 475.

[5]Petitioners' tax return for 2000 was due on Apr. 16, 2001, and SPK's tax return for 2000 was due on Mar. 15, 2001.

Petitioners also argue that Rev. Proc. 99-17, supra, is invalid because section 475(g) restricts the Commissioner's ability to prescribe the time and manner of the mark-to-market election only by regulation, not by issuing procedures. We disagree. We have previously considered the validity of Rev. Proc. 99-17, supra, and concluded that the Commissioner issued it under the Secretary's general authority to prescribe the time and manner of the mark-to-market election. Lehrer v. Commissioner, T.C. Memo. 2005-167. We also noted in Lehrer that the taxpayers' election was so late that even without looking to Rev. Proc. 99-17, supra, for guidance, we would still have concluded that the taxpayers were not entitled to change their method of accounting. Id. (citing Pac. Natl. Co. v. Welch, 304 U.S. 191, 194-195 (1938), and Wierschem v. Commissioner, 82 T.C. 718, 722-724 (1984)).

We conclude, as we did in Lehrer, that Rev. Proc. 99-17, supra, was validly issued under the Secretary's authority to prescribe the time and manner of the election. Lehrer v. Commissioner, supra. Moreover, petitioners' and SPK's attempted elections were nearly 18 months late. We find, as in Lehrer, that these attempted elections were too late to allow petitioners and SPK to change their accounting method even absent the guidance of Rev. Proc. 99-17, supra.

Availability of Section 9100 Relief

Petitioners argue that, even if they and SPK did not make effective mark-to-market elections under the revenue procedure,

they are entitled to relief under section 9100 and the corresponding regulations. We disagree. Petitioners and SPK did not administratively seek extensions of time to file mark-to-market elections pursuant to section 9100. They simply noted it at the top of their Forms 3115.[6] Neither did petitioners raise the issue of section 9100 relief in the petition.

We find that neither petitioners nor SPK would be entitled to relief under section 9100 even if they had requested section 9100 relief and raised it as an assignment of error in the petition. Section 301.9100-3, Proced. & Admin. Regs., provides administrative relief for late mark-to-market elections if certain conditions are satisfied. The Commissioner grants requests for relief under this section if the taxpayer can show that the taxpayer acted reasonably and in good faith and the grant of relief will not prejudice the interests of the Government. Sec. 301.9100-3(a), Proced. & Admin. Regs.; see Vines v. Commissioner, 126 T.C. 279 (2006).

A taxpayer is deemed not to have acted reasonably and in good faith if the taxpayer uses hindsight in requesting relief.

---

[6]The notation at the top of petitioners' and SPK's Forms 3115, Application for Change in Accounting Method, indicates that the Forms 3115 were filed "pursuant to section 301.9100-2." Relief under sec. 301.9100-2, Proced. & Admin. Regs., is unavailable for extensions of time to file mark-to-market elections under sec. 475(f) because it does not apply to elections, like the mark-to-market election, that must be made by the due date of the return without regard to extensions. Sec. 301.9100-2(b), Proced. & Admin. Regs.; Rev. Proc. 99-17, 1999-1 C.B. 503. Petitioners and SPK raised the issue of sec. 9100 relief in their ruling requests but did not further pursue sec. 9100 relief at the administrative level after they withdrew the ruling requests.

Sec. 301.9100-3(b)(3)(iii), Proced. & Admin. Regs. The Commissioner ordinarily will deny relief if specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer. Id. A taxpayer attempting to make a mark-to-market election years after it is due (while continuing to trade in the meantime) in an attempt to convert capital losses to ordinary losses is a classic example of a taxpayer seeking to use hindsight. Vines v. Commissioner, supra at 293-294 (describing the facts of Lehrer v. Commissioner, supra, as a classic example of taxpayers seeking benefit of hindsight); Acar v. United States, 98 AFTR 2d 2006-6296, 2006-2 USTC par. 50,529 (N.D. Cal. 2006). This is precisely what petitioners and SPK are attempting to do.

Petitioners and SPK attempted to make mark-to-market elections nearly 18 months late to convert capital losses into ordinary losses. Unlike the taxpayer in Vines (who filed the election only months late and discontinued trading during the brief interlude), petitioners and SPK continued their trading activities in the meantime. See Vines v. Commissioner, supra; Lehrer v. Commissioner, supra. The facts here present yet another example where a taxpayer seeks to use hindsight to make the mark-to-market election when it is most advantageous. See Vines v. Commissioner, supra; Lehrer v. Commissioner, supra. Accordingly, petitioners and SPK are deemed not to have acted reasonably and in good faith and are not qualified for section 9100 relief.

Conclusion

We conclude as a matter of law that petitioners and SPK each failed to make effective mark-to-market elections under section 475(f) for either tax year 2000 or tax year 2001.  Accordingly, we shall grant respondent's motion for partial summary judgment and deny petitioners' motion for partial summary judgment.

To reflect the foregoing,

An appropriate

order will be issued.