JOHN C. ZINNIEL AND GAYLE A. ZINNIEL, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 31100-84—31102-84     Filed August 26, 1987.

---

[1]Cases of the following petitioners are consolidated herewith: David N. Merryfield and Jane A. Merryfield, docket No. 31101-84; and James G. Samuels and Margaret Samuels, docket No. 31102-84.

x

*Eugene O. Duffy*, for the petitioners.
*James M. Klein*, for the respondent.

OPINION

WELLS, *Judge:** By statutory notices of deficiency dated June 6, 1984, respondent determined deficiencies in petitioners' income taxes for the taxable years ended December 31, 1978, and December 31, 1979, as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 31100-84 | John C. Zinniel | 1978 | $6,552 |
| | and Gayle A. Zinniel | 1979 | 631 |
| 31101-84 | David N. Merryfield | 1978 | 7,551 |
| | and Jane A. Merryfield | 1979 | 632 |
| 31102-84 | James G. Samuels | 1978 | 5,857 |
| | and Margaret Samuels | 1979 | 406 |

The issue presented for our decision is whether a new shareholder in a "small business corporation" that has made an election under section 1372(a)[2] to be taxed under subchapter S of the Code is required to file an affirmative refusal to consent with the Internal Revenue Service in order to terminate the corporation's election.

This case was submitted fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioners John C. Zinniel and Gayle A. Zinniel are husband and wife, and resided in Dousman, Wisconsin, at the time their petition in this case was filed. They filed joint Federal income tax returns for taxable years 1978 and 1979.

Petitioners David N. Merryfield and Jane A. Merryfield are husband and wife, and resided in Dousman, Wisconsin, at the time their petition in this case was filed. They filed

*By order of the Chief Judge, this case was assigned to Judge Wells for decision and opinion.

[2]Unless otherwise provided, all section and Code references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

joint Federal income tax returns for the taxable years 1978 and 1979.

During the taxable years 1978 and 1979, petitioners James A. Samuels and Margaret Samuels were husband and wife. At the time their petition in this case was filed, Mr. Samuels resided in North Prairie, Wisconsin, and Ms. Samuels resided in Dousman, Wisconsin. The Samuels filed joint Federal income tax returns for the taxable years 1978 and 1979.

Sierra Limited (Sierra) was incorporated under the laws of Wisconsin on March 5, 1976. At that time, Messrs. Merryfield, Samuels, and Zinniel each owned one-third of the outstanding 900 shares of stock in Sierra (or 300 shares each). Sierra used a fiscal taxable year ending March 31. Sierra made an election under section 1372(a) to be taxed under subchapter S of the Code (the election is hereinafter referred to as a subchapter S election), and the election was first effective for Sierra's fiscal taxable year ended on March 31, 1977.

It was decided that Sierra would adopt a qualified pension plan during 1977. Sierra's advisers were asked to "make the necessary changes."[3]

Petitioners' legal adviser, Patrick J. O'Neil (O'Neil), advised petitioners that a termination of Sierra's subchapter S election could be effected by a failure of new shareholders to consent to the election after becoming shareholders.[4]

On November 30, 1977, each Sierra shareholder (i.e., Messrs. Merryfield, Samuels, and Zinniel) transferred 30 shares of Sierra stock to his spouse. At that same time, a document entitled "Refusal to Consent to Small Business Corporation Election" (hereinafter referred to as the Refusal to Consent) was executed by the spouses (hereinafter referred to as the new Sierra shareholders) and filed with Sierra. The Refusal to Consent states as follows:

---

[3] The stipulation of facts in this case does not specify the changes that were requested.

[4] This advice was apparently given to petitioners in connection with the decision to adopt a qualified pension plan.

REFUSAL TO CONSENT
TO SMALL BUSINESS CORPORATION ELECTION

SIERRA LIMITED
2306 Grandview Blvd.
Waukesha, Wisconsin 53186

WE, the undersigned shareholders hereby refuse to consent to the election of the above corporation, SIERRA LIMITED, to be treated as a small business corporation under Section 1372(a) of the Internal Revenue Code.

| NAME | ADDRESS | NUMBER OF SHARES | DATE SHARES ACQUIRED |
|---|---|---|---|
| Jane Merryfield | _____ | 30 | 11/30/77 |
| Margaret Samuels | _____ | 30 | 11/30/77 |
| Gayle Zinniel | _____ | 30 | 11/30/77 |

Dated: November 30, 1977    (S) Jane Merryfield
JANE MERRYFIELD

Dated: November 30, 1977    (S) Margaret Samuels
MARGARET SAMEULS [sic]

Dated: 11/30/77    (S) Gayle A. Zinniel
GAYLE ZINNIEL

On November 30, 1977 (the same date that the Refusal to Consent was filed with Sierra), a Form 5301, Application for Determination for Defined Contribution Plan, was filed with the Internal Revenue Service (hereinafter referred to as the Service). The form reflects that Sierra was a "Corporation" rather than a "Subchapter S Corporation." The Service issued a favorable determination letter with respect to the qualified status of Sierra's employee pension plan.

The following document was attached to the income tax return filed on behalf of Sierra for Sierra's taxable year ended March 31, 1978:

Dear Sirs:

In accordance with the requirements of Regulation Section 1.1372-4(b)(1)(iii), this is to notify you of the termination of the election to be subject to Sub-Chapter S made by Sierra Limited, Post Office 247, North

Prairie, Wisconsin 53153. The election was terminated by the failure of new shareholders to consent to the election within the required time. On November 30, 1977, Jane Merrifield, Margaret Samuels and Gayle Zinniel each acquired thirty shares of Sierra Limited. They subsequently failed to consent to the election to treat Sierra Limited as a Sub-Chapter S corporation.

SIERRA LIMITED

BY: _____

JOHN C. ZINNIEL, *Agent*

On December 28, 1978, pursuant to a request by one of respondent's employees, Sierra's accountant sent a letter to respondent, along with the Refusal to Consent. Respondent subsequently determined that Sierra's subchapter S election had not been effectively terminated, and that petitioners were therefore required to report on their tax returns for the taxable years in issue their distributive shares of Sierra's income, loss, and various credits, as well as certain excess contributions that had been made on behalf of petitioners under the Sierra pension plan.

The issue to be decided in this case requires an analysis of section 1372(e)(1) and the regulations thereunder.

## *Section 1372(e)(1)*

Section 1372(a) provides that under certain circumstances, a small business corporation may elect not to be subject to normal income taxes and surtaxes.[5] This election is commonly referred to as a "subchapter S election."

Section 1372(e)(1) provides, in relevant part, as follows:

(A) An election under subsection (a) made by a small business corporation shall terminate if any person who was not a shareholder in such corporation—

    (i) on the first day of the first taxable year of the corporation for which the election is effective, if such election is made on or before such first day, or

    (ii) on the day on which the election is made, if such election is made after such first day,

---

[5]The effect of the election is that the corporation that makes the election and the corporation's shareholders are subject to the provisions of subch. S of the Code. Sec. 1372(b).

Sec. 1372 was redesignated as sec. 1362 by sec. 2, Subchapter S Revision Act of 1982, 96 Stat. 1669. Furthermore, the "normal tax" and "surtax" terminology was abolished by sec. 301(a), Revenue Act of 1978, 92 Stat. 2820, for taxable years beginning after Dec. 31, 1978.

*becomes a shareholder in such corporation and affirmatively refuses (in such manner as the Secretary shall by regulations prescribe) to consent to such election on or before the 60th day after the day on which he acquires the stock.*

\*     \*     \*     \*     \*     \*     \*

(C) Any termination of an election under subparagraph (A) by reason of the affirmative refusal of any person to consent to such election shall be effective for the taxable year of the corporation in which such person becomes a shareholder in the corporation and for all succeeding taxable years of the corporation.

[Emphasis supplied.[6]]

Respondent contends that the Refusal to Consent that was filed with Sierra by the new Sierra shareholders was not an effective "affirmative refusal" under section 1372(e)(1) because the Refusal to Consent was not filed with the Service. Petitioners contend that the plain meaning of the statutory language contained in section 1372(e)(1) did not require the new Sierra shareholders to file the Refusal to Consent with the Service in order to terminate Sierra's subchapter S election. Petitioners further contend that the legislative history of section 1372(e)(1) does not clearly indicate that Congress intended to require by statute that new shareholders file a document with the Service that manifests an affirmative refusal to consent in order to terminate a subchapter S election. We agree with petitioners.

The Supreme Court has set out the following canons of statutory construction, which are a fitting framework for the analysis of section 1372(e)(1):

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. \* \* \* Frequently, however, \* \* \* when the plain meaning \* \* \* [produced an unreasonable result] "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. \* \* \* [*United States*

---

[6]Due to statutory modifications made under the Subchapter S Revision Act of 1982, "[A] person becoming a shareholder of a subchapter S corporation after the initial election will not have the power to terminate the election by affirmatively refusing to consent to the election (unless that person owns more than one-half of the voting stock)." S. Rept. 97-640 (1982), 1982-2 C.B. 718, 723. See also sec. 1362(d)(1), as amended by sec. 2, Subchapter S Revision Act of 1982, 96 Stat. 1669; H. Rept. 97-826 (1982), 1982-2 C.B. 730, 735. This provision is not applicable to the taxable years in issue in the instant case.

*v. American Trucking Associations*, 310 U.S. 534, 543 (1940). Fn. refs. omitted.]

## Plain Meaning of the Statutory Language

Section 1372(e)(1) essentially provides that a subchapter S election that was made by a corporation shall terminate if any person becomes one of the corporation's shareholders within the period of time set forth in the statute and affirmatively refuses to consent to the corporation's election "in such manner as the Secretary shall by regulations prescribe." The word "affirmative" is generally defined as an "assertion." Webster's Third International Dictionary (1981). The plain meaning of the statutory language "affirmatively refuse" therefore requires that a new shareholder in a subchapter S corporation assert a refusal to the continuation of the corporation's subchapter S election in order to revoke the election. Section 1372(e)(1) gives the Secretary[7] broad power to prescribe the manner in which new shareholders must assert their refusals, and does not set forth specific procedural requirements (other than the 60-day time requirement). Congress, in adopting the words contained in section 1372(e)(1), did not preclude the Secretary from prescribing a method other than one which requires new shareholders to file an affirmative refusal to consent with the Service.[8] Therefore, we hold that the plain meaning of the relevant language under section 1372(e)(1) does not require a new shareholder to file an affirmative refusal to consent with the Service.

## Purpose of the Legislation

When, in the past, we have had to determine whether the purpose for legislation was plainly at odds with the meaning

---

[7] References to the "Secretary" are to the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

Sec. 301.7805-1, Proced. & Admin. Regs., provides, in relevant part, that the "Commissioner, with the approval of the Secretary, shall prescribe all needful rules and regulations for the enforcement of the Code * * * , including rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue."

[8] In instances where the Secretary is given the authority in the Code to prescribe the method for making a specified election, the method chosen to give effect to the election has not always been to require a filing with the Service. For example, sec. 48(d) allows a lessor of certain property to "elect," in effect, to pass through the investment tax credit to the lessee. Sec. 48(d) provides that the election is to be made "at such time, in such manner, and subject to such conditions as are provided by regulations prescribed by the Secretary." Regulations were issued pursuant to that section which allow property by property elections to be made by a lessor by filing a statement *with the lessee*. Sec. 1.48-4(f)(1), Income Tax Regs.

of the relevant statutory language, we have required *"unequivocal evidence* of legislative purpose before construing the statute so as to override the plain meaning of the words used therein." *Huntsberry v. Commissioner*, 83 T.C. 742, 747-748 (1984) (emphasis supplied). See also *Estate of Sachs v. Commissioner*, 88 T.C. 769, 773 (1987). In the present case, the relevant inquiry is whether there is unequivocal evidence that Congress intended that section 1372(e)(1) would, by that section's own terms, and without any regulatory requirement, require the filing of an affirmative refusal to consent with the Service.

We start our inquiry by examining section 1372(e)(1), prior to its amendment by section 902(c)(3), Tax Reform Act of 1976, 90 Stat. 1609. For taxable years beginning before January 1, 1977, section 1372(e)(1)[9] required new shareholders in a corporation to consent to a corporation's subchapter S election under section 1372(a) within the period of time prescribed by the Secretary in order to avoid a termination of the corporation's election. Sec. 1.1372-3(b), Income Tax Regs.,[10] required that the consent "be made in a statement filed (with the internal revenue officer with whom the election is filed) within the period of 30 days

---

[9] Sec. 1372(e)(1) provided as follows for taxable years beginning before Jan. 1, 1977:

(1) NEW SHAREHOLDERS.—An election under subsection (1) made by a small business corporation shall terminate if any person who was not a shareholder in such corporation—

(A) on the first day of the first taxable year of the corporation for which the election if effective, if such election is made on or before such first day, or

(B) on the day on which the election is made, if such election is made after such first day, becomes a shareholder in such corporation and does not consent to such election within such time as the Secretary shall prescribe by regulations. Such termination shall be effective for the taxable year of the corporation in which such person becomes a shareholder in the corporation and for all succeeding taxable years of the corporation.

[10] The relevant portion of sec. 1.1372-3(b), Income Tax Regs., provided as follows:

(b) *New shareholders.* If a person becomes a shareholder of an electing small business corporation after the first day of the taxable year for which the election is effective, or after the day on which the election is made (if such day is later than the first day of the taxable year), the consent of such shareholder shall be made in a statement filed (with the internal revenue officer with whom the election is filed) within the period of 30 days beginning with the day on which such person becomes a new shareholder. A copy of such consent should be furnished to the corporation by the new shareholder. If the new shareholder is an estate, the 30 day period shall not begin until the executor or administrator has qualified under local law to perform his duties, but in no event shall such period begin later than 30 days following the close of the corporation's taxable year in which the estate became a shareholder. The statement of consent shall set forth the name and address of the corporation and of such new shareholder, the number of shares of stock owned by such shareholder, the date on which such shares were acquired, and the name and address of each person from whom such shares were acquired. A copy of the consent of such new shareholder shall be filed with the return required to be filed under section 6037 for the taxable year to which such consent applies. * * *

beginning with the day on which such person becomes a new shareholder." The Commissioner granted extensions of time for filing consents if "there was reasonable cause for the failure to file" the consents, and certain other conditions were satisfied. Sec. 1.1372-3(c), Income Tax Regs.[11]

As part of the Tax Reform Act of 1976, Congress changed the statutory consent requirement to a statutory affirmative refusal to consent requirement and changed the 30-day regulatory period for filing the consent with the Service to a 60-day statutory period for making an affirmative refusal. Sec. 902(c)(3), Tax Reform Act of 1976, 90 Stat. 1609.

The origin for the adoption of the changes by the Conference Committee was a Senate floor amendment. See S. Rept. 94-1236 (Conf.) (1976), 1976-3 C.B. (Vol. 3) 807, 953 (Senate amendment numbered 62); UP Amendment 338, 122 Cong. Rec. 26148 (1976). There are no committee reports with respect to the Tax Reform Act of 1976 that provide guidance concerning the issue whether Congress intended that section 1372(e)(1) would require new shareholders in a corporation that had made a subchapter S election to file an affirmative refusal to consent with the Service in order to terminate the election.

The relevant portion of the General Explanation of the Tax Reform Act of 1976 (hereinafter referred to as the General Explanation, but also commonly referred to as the Blue Book) provides as follows:

---

[11]Sec. 1.1372-3(c), Income Tax Regs., provided as follows:

(c) *Extension of time for filing consents.* An election which is timely filed for any taxable year and which would be valid, or would not have terminated, except for the failure of any shareholder to file a consent within the time prescribed in paragraph (a) or (b) of this section will not be invalid, or will not be treated as having terminated, for such reason if—

(1) It is shown to the satisfaction of the district director or director of the service center that there was reasonable cause for the failure to file such consent and that the interests of the Government will not be jeopardized by treating such election as valid, or as not having terminated,

(2) Such shareholder files a proper consent to the election within such extended period of time as may be granted by the Internal Revenue Service, and

(3) New consents are filed within such extended period of time as may be granted by the Internal Revenue Service, by all persons who were shareholders of the corporation at any time during the taxable year with respect to which the failure to consent would (but for the provisions of this paragraph) cause the corporation's election to be invalid or to terminate, and by all persons who were shareholders of the corporation subsequent to such taxable year and prior to the date on which an extension of time is granted in accordance with this paragraph.

*Prior law*

Statutory rules provide generally that all shareholders of a corporation must consent to either an election of subchapter S status or to a voluntary revocation of this election. However, prior law provided that an election of subchapter S status would be involuntarily terminated if any new shareholder of the corporation did not affirmatively consent to the election, generally within a period of 30 days from the day he became a new shareholder. *A consent for this purpose involved a formal filing with the Internal Revenue Service.*

*Reason for change*

The requirement of a new shareholder's affirmative consent to a subchapter S election within a limited period of time could result in an inadvertent termination of the election if the new shareholder failed to file a timely consent or was not aware of the necessity of filing a consent. Congress was concerned that a termination of subchapter S status in these circumstances would cause a severe hardship not only to the new shareholder but to all shareholders of the corporation. It therefore decided to require that a new shareholder must affirmatively refuse to consent to a subchapter S election in order to terminate such an election.

*Explanation of provision*

Under the Act, in order for a subchapter S election to be terminated, a new shareholder must affirmatively refuse to consent to the election within 60 days from the time he acquired his stock in the corporation. In the case where a decedent's estate is the new shareholder, the 60 day period for *filing* an affirmative refusal will begin upon the earlier of either the day on which the executor or administrator of the estate qualifies or the last day of the corporation's taxable year during which the decedent's death occurred. The Secretary is authorized to issue regulations prescribing the manner in which an affirmative refusal is to be *filed.*

[Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 223. Emphasis supplied.]

While the General Explanation contains several references to "filing," those references are not unequivocal evidence of legislative intent to require by *statute* that new shareholders file affirmative refusals to consent with the Service. The General Explanation was prepared by the *staff* of the Joint Committee, and was issued *after* section 1372(e)(1) was drafted. The General Explanation therefore "does not directly represent the views of the legislators or an explanation available to them when acting on the bill" (*McDonald v. Commissioner*, 764 F.2d 322, 336-337 n. 25 (5th Cir. 1985), affg. a Memorandum Opinion of this Court), and is technically not part of the legislative history of the Tax Reform Act of 1976 (*Estate of Hutchinson v. Commissioner*,

765 F.2d 665, 669-670 (7th Cir. 1985), affg. a Memorandum Opinion of this Court; *Estate of Sachs v. Commissioner*, 88 T.C. at 775 n. 3). For these reasons, the portion of the General Explanation noted above, standing alone, without any direct evidence of legislative intent, is not unequivocal evidence of legislative intent to require that new shareholders in a corporation that has made a subchapter S election file an affirmative refusal to consent with the Service in order to terminate the corporation's election.[12]

Based upon the sparse legislative history underlying section 1372(e)(1) and the General Explanation, we are not prepared to find that Congress was attempting to require by *statute* that new shareholders file affirmative refusals to consent with the Service, and thereby preclude the Secretary from prescribing some other manner for new shareholders to affirmatively refuse to consent under section 1372(e)(1). We therefore hold that the plain meaning of the statutory language contained in section 1372(e)(1) is not "plainly at variance with the policy of the legislation as a whole." Thus, we follow the statute's literal words, which do not require that an affirmative refusal to consent be filed with the Service in order to terminate a subchapter S election.

### Proposed Regulations

As noted in our analysis of section 1372(e)(1), that section states that a corporation's subchapter S election terminates when a new shareholder "affirmatively refuses (*in such manner as the Secretary shall prescribe*) to consent to such election." (Emphasis supplied.) No regulations had been issued under section 1372(e)(1) prior to the time petitioners

---

[12]While the General Explanation would not, alone, provide this Court with the unequivocal evidence required by this Court for purposes of performing the analysis announced in *United States* v. *American Trucking Associations*, 310 U.S. 534, 543 (1940), we recognize that the General Explanation has been relied upon by the Supreme Court in its analysis of tax statutes (see, e.g., *FPC v. Memphis Light, Gas & Water Div.*, 411 U.S. 458, 471-472 (1973)), as well as by this Court (see, e.g., *Estate of Sachs v. Commissioner*, 88 T.C. 769 (1987)), and is entitled to great respect (*McDonald v. Commissioner*, 764 F.2d 322, 336-337 n. 25 (5th Cir. 1985), affg. a Memorandum Opinion of this Court).

Even if we assume that the General Explanation could provide us with the necessary evidence of legislative intent for purposes of our analysis in this case, use of various forms of the term "file" by the staff of the Joint Committee on Taxation in its explanation of the affirmative refusal requirement may only indicate that Congress expected that the Secretary would issue regulations requiring new shareholders to file affirmative refusals with the Service.

attempted to revoke Sierra's subchapter S election.[13] Finally, on April 17, 1980, after the taxable years in issue, proposed regulations under section 1372(e)(1) were published.[14] See 45 Fed. Reg. 26092, 26097 (Apr. 17, 1980); secs. 1.1372-3(b)(1), 1.1372-3(b)(2), 1.1372-3(b)(3), Proposed Income Tax Regs. These proposed regulatory sections provide, in relevant part, as follows:

(b) *New shareholders*—(1) *General rule.* (i) If a person becomes a shareholder of an electing small business corporation after the day on which the [corporation's subchapter S] election is made, the new shareholder must affirmatively refuse to consent to the election in order to terminate the election. The affirmative refusal to consent must be made in a statement filed (with the service center with which the election is filed) within the period of 60 days beginning with the day after the day on which the person becomes a new shareholder. A copy of the refusal to consent should be furnished to the corporation by the new shareholder. * * * The statement of affirmative refusal to consent must set forth the name and address of the corporation and of the new shareholder, the taxpayer identification number of the corporation, the number of shares of stock owned by the new shareholder, the date on which the shares were acquired, and the name and address of each person from whom the shares were acquired. A copy of the affirmative refusal to consent of the new shareholder must be filed with the return required to be filed by the electing small business corporation under section 6037 for the taxable year to which the affirmative refusal to consent applies.

\*     \*     \*     \*     \*     \*     \*

(2) *Years beginning after 1976 and before 1979.* For taxable years beginning after 1976 and before 1979, if a person becomes a shareholder of an electing small business corporation after the first day of the first taxable year for which the election is effective, or after the day on which the election is made (if that day is later than the first day of the taxable year), the new shareholder must affirmatively refuse to consent to the election in order to terminate the election. The affirmative refusal to consent is made in the same manner as for taxable years beginning after 1978 under paragraph (b)(1)(i) of this section.

(3) *Prior defective affirmative refusals to consent.* A timely defective affirmative refusal to consent filed by a shareholder with the Internal

---

[13]Regulations "must, by their terms and in their application, be in harmony with [statutory law]." *Scofield v. Lewis*, 251 F.2d 128, 132 (5th Cir. 1958). In the instant case, sec. 1.1372-3(b), Income Tax Regs., still only interprets sec. 1372(e)(1) prior to its amendment by sec. 902(c)(3) of the Tax Reform Act of 1976; thus, that regulatory section only deals with the requirement under prior law that a new shareholder consent to a corporation's subch. S election within the period of 30 days beginning with the day on which the person becomes a new shareholder, and is not by its terms and in its application in harmony with sec. 1372(e)(1), as amended by sec. 902(c)(3), Tax Reform Act of 1976, 90 Stat. 1609. The filing requirement under sec. 1.1372-3(b), Income Tax Regs., therefore, does not apply to sec. 1372(e)(1), as amended.

[14]No temporary or final regulations were ever issued under sec. 1372(e)(1), as amended by sec. 902(c)(3), Tax Reform Act of 1976, 90 Stat. 1609.

Revenue Serve prior to [the date which is 30 days after the day on which these regulations are published in the Federal Register as a Treasury decision] will be considered effective by the Internal Revenue Service if the names of both the shareholder and the corporation are set forth in the statement of affirmative refusal to consent. For this purpose, a defective affirmative refusal to consent is one that was not properly filed or did not contain all the information required by paragraph (b)(1)(i) or (2) (as the case may be) of this section.

Both respondent and petitioners have made numerous arguments concerning the applicability of these proposed regulations to this case.[15] Nevertheless, proposed regulations are merely suggestions made for comment. See *LeCroy Research Systems Corp. v. Commissioner*, 751 F.2d 123, 127 (2d Cir. 1984), revg. on other grounds a Memorandum Opinion of this Court; *F.W. Woolworth v. Commissioner*, 54 T.C. 1233, 1265-1266 (1970). Proposed regulations "carry no more weight than a position advanced on brief by the respondent." *F.W. Woolworth v. Commissioner, supra*. If respondent wanted these sections of the regulations to carry more weight than a position advanced on brief, he could have issued them as temporary regulations. *LeCroy Research Systems Corp. v. Commissioner, supra*. Thus, we hold that the proposed regulations cited by the parties do not have the force of law, and therefore are not determinative of the issue whether an affirmative refusal to consent under section 1372(e)(1) must be filed with the Service.

This Court recognizes that the process for issuing Treasury regulations is often slow, due to the many levels of review and the procedures for notice and comment to which regulations are usually subject.[16] Nevertheless, we fail to understand how the Secretary could fail to issue any temporary or final regulations prescribing the procedures for new shareholders to affirmatively refuse to consent to subchapter S elections when there was a statutory direction

---

[15]Respondent argues that secs. 1.1372-3(b)(1) and 1.1372-3(b)(2), Proposed Income Tax Regs., 45 Fed. Reg. 26097 (Apr. 17, 1980), apply to the present case and required the new Sierra shareholders to file the Refusal to Consent with the Service. Petitioners argue that even if the proposed regulations have legal effect, sec. 1.1372-3(b)(3), Proposed Income Tax Regs., cured any defect with respect to the Refusal to Consent.

[16]See Administrative Procedure Act of 1946, 5 U.S.C. secs. 553(b), 553(c), 553(e) (1982) (specifying circumstances under which notice and comment procedures must be followed). See also 4 B. Bittker, Federal Taxation of Income, Estates, and Gifts, par. 110.4.1, at 110-25— 110-27 (1981) (discussing Treasury regulations, generally, including notice and comment procedures).

to issue such regulations (the statute required that new shareholders affirmatively refuse to consent "in such manner as the Secretary *shall* by regulations prescribe").[17] (Emphasis supplied.) Furthermore, in light of the prior regulatory requirement under section 1.1372-3, Income Tax Regs., that new shareholders file consents to the continuation of subchapter S elections with the Service, it does not appear that it would have been difficult to issue temporary regulations prescribing similar filing requirements for new shareholders to affirmatively refuse to consent. Finally, if the Commissioner and the Secretary deemed a filing requirement to be crucial to their ability to administer section 1372(e)(1), they should have issued temporary or final regulations prescribing the requirement. It is obvious that the amendment of section 1372(e)(1) was an attempt by Congress to remove a trap for the unwary, i.e., an inadvertent termination of a subchapter S election. The failure to issue temporary or final regulations under the new statutory section frustrated that purpose by creating a new trap, i.e., an inadvertent failure to terminate a subchapter S election.

The parties have stipulated that the Refusal to Consent in the instant case was filed with Sierra by the new Sierra shareholders within the 60-day statutory period for filing an affirmative refusal to consent. Pursuant to the foregoing statutory and regulatory analyses, we hold that the filing of the Refusal to Consent with Sierra by the new Sierra shareholders constituted an affirmative refusal to consent for purposes of section 1372(e)(1), and that Sierra's subchapter S election was terminated for the taxable years in issue.

Petitioners made several additional arguments in the instant case. Our analysis in this case, however, makes it unnecessary for us to consider those arguments.

To reflect the foregoing,

*Decisions will be entered for the petitioners.*

---

[17]Sec. 343(b)(2), Revenue Act of 1978, 92 Stat. 2844, and sec. 5(b)(1), Act of Nov. 10, 1978, Pub. L. 95-628, 92 Stat. 3628, changed the relevant regulatory language to "in such manner as the Secretary *may* by regulations prescribe." (Emphasis supplied.) The effect of that change can be of no concern to this Court since the change does not apply to the taxable years in issue. See *First Chicago Corp. v. Commissioner*, 88 T.C. 663, 676 n. 11 (1987).