T.C. Memo. 2006-258

UNITED STATES TAX COURT

L.S. VINES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12763-04.                    Filed November 30, 2006.

<u>David D. Aughtry</u>, for petitioner.

<u>Monica D. Armstrong</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant matter is before the Court on

petitioner's motion for reimbursement of litigation costs,

including attorney's fees pursuant to section 7430 and Rule 231.

The issues in dispute are:  (1) Whether petitioner meets the net

worth requirements of section 7430(c)(4)(A)(ii); (2) whether

petitioner has properly substantiated his claimed litigation

costs and attorney's fees; (3) whether petitioner's claimed litigation costs and attorney's fees are reasonable; (4) and whether respondent's position in the instant case was substantially justified. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties have not requested a hearing on the instant motion. Consequently, we base our decision on the parties' submissions and the record. The underlying facts of the instant case are set forth in detail in Vines v. Commissioner, 126 T.C. 279 (2006) (Vines I), and we incorporate by reference the portions of Vines I that are relevant to our disposition of the instant motion. The following is a summary of the factual and procedural background of the instant case.

## Background

At the time of filing the petition, petitioner resided in Birmingham, Alabama. Petitioner is an attorney who practiced personal injury law in Birmingham, Alabama, for approximately 34 years. During 1999, petitioner settled a class action lawsuit and received approximately one-half of his compensation for settling the class action suit during the taxable year 1999 and the other half during the taxable year 2000. Petitioner reported net profits of $18,520,775 and $16,966,055 from his law practice

on line 29 of Schedule C, Profit or Loss From Business, of his Forms 1040, U.S. Individual Income Tax Return, for taxable years 1999 and 2000, respectively.

During the fall of 1999, petitioner decided to begin a new career as a securities trader. Petitioner established brokerage accounts with DLJdirect and Ameritrade, deposited $5 million in each of those accounts, and became engaged in the trade or business of trading securities on January 28, 2000.[1]

Petitioner used margin borrowing as part of his securities trading strategy. On April 14, 2000, DLJdirect forced the liquidation of petitioner's entire account because petitioner failed to cover a margin call after technology stocks declined sharply during early April 2000. As of April 14, 2000, petitioner's net trading losses totaled $25,196,151.54.

Petitioner relied on certified public accountants to advise him on Federal tax matters and to prepare his Federal tax returns. J. Wray Pearce (Mr. Pearce), a certified public accountant with over 30 years of experience, had served as petitioner's business and personal accountant for more than 13 years and was very familiar with petitioner's securities trading business.

---

[1]The parties stipulated this fact based on the volume and frequency of petitioner's trading.

On April 13, 2000, Mr. Pearce met with petitioner to obtain his signature on Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, for taxable year 1999. On April 17, 2000, petitioner timely filed Form 4868, requesting an extension until August 15, 2000, to file his return for taxable year 1999. A section 475(f) election was not enclosed with the Form 4868, however, because Mr. Pearce did not know about the availability of section 475(f) or any Internal Revenue Service (IRS) revenue procedure related to securities traders.

On or about June 4, 2000, Dr. James G. Sullivan (Dr. Sullivan), a friend of petitioner, visited petitioner at his home. Petitioner told Dr. Sullivan that he had suffered significant losses during the first quarter of the 2000 taxable year and that, consequently, his DLJdirect account had been liquidated on April 14, 2000. Dr. Sullivan knew several professional "day traders" and informed petitioner that he might be able to deduct his securities trading losses as ordinary losses.

On June 6, 2000, petitioner spoke with another accountant, Charles E. Sellers (Mr. Sellers), regarding the possibility of deducting his securities trading losses as ordinary losses. Mr. Sellers also was unaware of section 475(f) and the mark-to-market election available to securities traders. Petitioner retrieved

the citation of section 475(f) from Dr. Sullivan and relayed it to Mr. Sellers.

Mr. Sellers informed petitioner that, according to Rev. Proc. 99-17, 1999-1 C.B. 503, in order for a section 475(f) election to be effective for the 2000 taxable year, petitioner had to file the election by April 17, 2000, the due date for his 1999 tax return. Mr. Sellers then informed petitioner that he should qualify for an extension of time within which to make the section 475(f) election under section 301.9100-3, Proced. & Admin. Regs. (section 9100 relief).

Petitioner hired the Washington, D.C., law firm of Caplin & Drysdale to prepare and file the section 475(f) election and request for section 9100 relief. On July 21, 2000, Caplin & Drysdale, on behalf of petitioner, submitted to respondent a "Taxpayer Election of Mark to Market Accounting Under Section 475(f)" (section 475(f) election), along with a six-page letter outlining the reasons petitioner should qualify for section 9100 relief. The letter also stated that petitioner would file a formal private letter ruling request. Also enclosed with the section 475(f) election and the six-page letter was a "protective" Form 3115, Application for Change in Accounting Method. The Form 3115 stated that petitioner intended to adopt an accounting method for his new securities-trading business, not

change an accounting method for an existing business, and therefore a section 481(a) adjustment was not necessary.

Caplin & Drysdale advised petitioner that he had bound himself to adopt the mark-to-market method of accounting for his trading business by filing the section 475(f) election and requesting section 9100 relief on July 21, 2000. On that basis, Caplin & Drysdale and Mr. Sellers advised petitioner that he could resume his securities trading activities without adversely affecting his request for section 9100 relief. Petitioner resumed his trading activities on July 26, 2000.

Between the date that petitioner should have filed his section 475(f) election, April 17, 2000, and the date petitioner actually filed his section 475(f) election, July 21, 2000, petitioner: (1) Did not purchase any publicly traded stock; (2) did not sell any publicly traded stock; and (3) had no gain or loss from the disposition of any publicly traded stock. Thus, petitioner's losses on July 21, 2000, were exactly the same as they were on April 17, 2000.

On October 27, 2000, Caplin & Drysdale submitted to respondent on behalf of petitioner a formal private letter ruling request seeking section 9100 relief for his 2000 section 475(f) election (section 9100 relief request).

On December 5, 2001, respondent denied petitioner's section 9100 relief request in Priv. Ltr. Rul. 129057-00 (200209053),

stating in pertinent part that an accounting adjustment under section 481(a) was necessary and that, because petitioner's circumstances were not unusual or compelling, it was unnecessary to consider whether petitioner acted reasonably and in good faith under section 301.9100-3(b), Proced. & Admin. Regs.

Petitioner timely petitioned this Court contending that he should be entitled to an extension of time to file his section 475(f) election pursuant to section 301.9100-3, Proced. & Admin. Regs., because he acted reasonably and in good faith and the interests of the Government would not be prejudiced. Respondent's contentions in Vines I were consistent with respondent's conclusions in Priv. Ltr. Rul. 129057-00.

The interpretation of section 301.9100-3, Proced. & Admin. Regs., and the parties' arguments regarding section 9100 relief presented an issue of first impression in this Court. Interpreting section 301.9100-3, Proced. & Admin. Regs., we held that petitioner was entitled to an extension of time to file his section 475(f) election because he acted reasonably and in good faith and the interests of the Government would not be prejudiced. See Vines v. Commissioner, 126 T.C. at 298-299. On June 12, 2006, petitioner filed the instant motion for reimbursement of litigation costs and attorney's fees totaling $428,835.

## Discussion

Section 7430(a) provides that a taxpayer may recover litigation costs incurred in a court proceeding brought against the United States in connection with the determination of a tax or penalty. Litigation costs may be awarded pursuant to section 7430 if the taxpayer is (1) the prevailing party, (2) exhausted available administrative remedies, (3) did not unreasonably protract the court proceedings, and (4) claimed reasonable administrative and litigation costs. Sec. 7430(a), (b)(1), (3), (c). The requirements of section 7430 are conjunctive, and failure to satisfy any one of the requirements precludes an award of costs. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

To be the prevailing party (1) the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue, or set of issues, presented, and (2) at the time the petition in the case was filed, the taxpayer must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B). Sec. 7430(c)(4)(A). The taxpayer will not be treated as the prevailing party, however, if the Commissioner establishes that the Commissioner's position was substantially justified. Sec. 7430(c)(4)(B); see also Pierce v. Underwood, 487 U.S. 552, 565 (1988).

Respondent concedes that petitioner exhausted all administrative remedies and did not unreasonably protract the

court proceedings. Respondent contends, however: (1) Petitioner has failed to establish that he meets the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B); (2) petitioner's claimed attorney's fees are not reasonable; (3) petitioner has failed to substantiate his litigation costs; and (4) petitioner should not be treated as the prevailing party because respondent's position was substantially justified. Respondent also contends that petitioner is not entitled to recover litigation costs and attorney's fees because petitioner recovered approximately $2.5 million in damages from his former accountant, Mr. Pearce, who failed to advise petitioner of the section 475(f) election. Respondent contends that an award of costs and fees in the instant case is tantamount to an award of punitive damages against respondent because the $2.5 million that petitioner recovered from Mr. Pearce far exceeds the litigation costs and fees sought by petitioner.[2] Because we hold, for reasons stated below, that respondent's position was substantially justified, we do not need to address the other issues remaining with respect to the instant motion.[3]

_____

[2]We note that, in 2003, petitioner settled his claim against Mr. Pearce for failing to advise petitioner about the availability of the sec. 475(f) election for approximately $2.5 million. Petitioner also settled a claim against one of the brokerage houses that liquidated petitioner's trading account for $1.75 million.

[3]Although we do not decide whether petitioner meets the $2
(continued...)

The Commissioner's position is substantially justified if, on the basis of all the facts and circumstances and legal precedent, the Commissioner acted reasonably. Pierce v. Underwood, supra; Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). In other words, the Commissioner's position must have a reasonable basis in both law and fact. Pierce v. Underwood, supra. A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Id. at 565. The Commissioner's position may be incorrect but still be substantially justified if "'a reasonable person could think it correct'". Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443

---

[3](...continued)
million net worth limitation of 28 U.S.C. sec. 2412(d)(2)(B), we note that, while petitioner incurred an approximate $26 million loss in April 2000, he also received approximately $35 million in taxable years 1999 and 2000 resulting in a net gain of almost $9 million for those taxable years. In his affidavit, petitioner listed assets totaling $3,074,552, but claims that his net worth when he filed the petition on July 21, 2004, was a negative $575,844 after subtracting a $3,692,356 tax liability, which petitioner computed based on our Opinion in Vines I on May 11, 2006. We also note that respondent contends that petitioner used the wrong method to value certain assets listed in petitioner's affidavit. If we were to consider these issues, we would require further evidence, and possibly a hearing, in order to decide whether petitioner meets the $2 million net worth limitation of 28 U.S.C. sec. 2412(d)(2)(B).

We also note that petitioner has not shown that he qualifies for the higher $7 million net worth limitation under 28 U.S.C. sec. 2412(d)(2)(B) because petitioner presented no evidence that, on the date he filed his petition, he was the owner of an unincorporated business.

(1997) (quoting Pierce v. Underwood, supra at 566 n.2). The fact that the Commissioner eventually loses does not establish that his position was unreasonable. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. Generally, the Commissioner's position is considered substantially justified when an issue is one of first impression. See TKB Intl. Inc. v. United States, 995 F.2d 1460, 1468 (9th Cir. 1993); Estate of Wall v. Commissioner, 102 T.C. 391, 394 (1994).

Relying on our decision in Zinniel v. Commissioner, 89 T.C. 357 (1987), petitioner contends that respondent's position cannot be considered substantially justified because section 475(g) commands the Secretary to issue regulations for implementing the mark-to-market election under section 475(f) and therefore Rev. Proc. 99-17, 1999-1 C.B. 503, is invalid. Regarding Rev. Proc. 99-17, supra, we note that respondent can reasonably rely upon a revenue procedure until it is revoked or held invalid. Cf. Rauenhorst v. Commissioner, 119 T.C. 157, 170 (2002) (holding that the Commissioner is bound to follow revenue rulings and we

treat those rulings as concessions in cases before us).[4] Nonetheless, in Vines I, we did not decide the issue of the validity of Rev. Proc. 99-17, supra, and we need not do so now.[5]

Petitioner also contends that, despite being an issue of first impression, respondent's position cannot be considered substantially justified because respondent "ignored" the language of section 301.9100-3, Proced. & Admin. Regs., which commands relief where the taxpayer acts reasonably and in good faith and the interests of the Government will not be prejudiced. We disagree. As we noted in Vines v. Commissioner, 126 T.C. at 289: "the interpretation of section 301.9100-3, Proced. & Admin. Regs., and the parties' arguments regarding section 9100 relief create an issue of first impression in this Court." Although we disagreed with respondent's interpretation of the regulation and whether relief was warranted under the facts of the instant case,

_____

[4]Indeed, there is a rebuttable presumption that the Commissioner's position is not substantially justified if the Commissioner fails to follow his own applicable published guidance, including: Regulations, revenue rulings, and revenue procedures. Sec. 7430(c)(4)(B)(ii), (iv). In the instant case respondent relied upon Rev. Proc. 99-17, 1999-1 C.B. 503. Respondent also relied upon respondent's interpretation of sec. 301.9100-3, Proced. & Admin. Regs. In Vines I, we however, disagreed with respondent's interpretation of that regulation in deciding an issue of first impression before this Court.

[5]We note that the taxpayer in Zinniel v. Commissioner, 89 T.C. 357 (1987) also filed a motion for litigation costs and attorney's fees, which we denied. See Zinniel v. Commissioner, 883 F.2d 1350 (7th Cir. 1989), affg. an order of this Court denying the taxpayer's motion for litigation costs and attorney's fees.

respondent believed that a section 481 adjustment was necessary and that petitioner's circumstances were not unusual or compelling because petitioner's reliance on his accountant did not actually cause petitioner to miss the deadline for filing the section 475(f) mark-to-market election.  The record indicates that respondent came to those conclusions after much deliberation and consultation within the IRS and not in a thoughtless or reckless manner as petitioner argues.  Based on the lack of guidance available at the time, we cannot say that it should have been "obvious" to respondent from the onset of the litigation that respondent's position was in error.  See Nalle v. Commissioner, supra at 192 (citing Sher v. Commissioner, 861 F.2d 131, 135 (5th Cir. 1988), affg. 89 T.C. 79, 84 (1987)). Accordingly, petitioner's motion will be denied.

To reflect the foregoing,

An appropriate order will

be issued.