T.C. Memo. 2009-267

UNITED STATES TAX COURT

L.S. VINES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2617-04L.          Filed November 24, 2009.

<u>Robert E. McKenzie</u>, <u>Kathleen M. Lach</u>, and <u>Adam S. Fayne</u>, for
petitioner.

<u>Gregory J. Stull</u> and <u>Angela B. Friedman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Pursuant to section 6330(d), petitioner
seeks review of respondent's determination sustaining a proposed
levy with respect to his 1999 Federal income tax liability.[1]

_____

[1]Unless otherwise indicated, section references are to the
(continued...)

FINDINGS OF FACT

The parties have stipulated some facts, which are so found. When he filed his petition, petitioner resided in Alabama.

Petitioner is an attorney who has practiced personal injury law in Birmingham, Alabama, since 1966. In 1999 he settled a large class action suit, generating a fee of approximately $25 million. He received about half of the fee in 1999 and the balance in early 2000.

Petitioner decided to wind down his law practice and begin a new career as a securities trader. In early 2000 he invested $25 million in the stock market. He traded mainly in large cap stocks and on the maximum allowable margin. Initially he was very successful--by March 15, 2000, the value of his stock account had grown from $25 million to about $32 million. In the latter part of March 2000, however, the value of his investments dropped sharply. He began receiving periodic margin calls. Initially he met them by selling stocks. By April 13 or 14, 2000, however, he was no longer able to meet the continuing margin calls. On or about April 15, 2000, his brokerage account was liquidated. Of his original $25 million investment, he was left with about $2 million.

---

[1](...continued)
Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

The question arose as to how he would pay his 1999 taxes, which were then due. On the advice of his longtime personal accountant, Wray Pearce, petitioner had previously made $4,000 total quarterly estimated tax payments with respect to his 1999 Federal income tax. In March 2000 Mr. Pearce advised him that his actual 1999 tax liability would be approximately $7 million.

On April 17, 2000, petitioner applied for an automatic extension of time until August 15, 2000, to file his 1999 income tax return.[2] He included no payment of his 1999 income tax with his application. On or about August 15, 2000, he applied for an extension of time until October 15, 2000, to file his 1999 return.

In the meantime, petitioner's internist had advised him of a provision of the tax law that might allow him to deduct his stock market losses. In May or June of 2000 petitioner discussed this matter with another certified public accountant, Charles Sellers, who advised him to get legal advice. In June of 2000 petitioner engaged the Washington, D.C., law firm of Caplin & Drysdale. Petitioner was advised that if he could make an election pursuant to section 475(f), he would be able to apply and carry back his

---

[2]The parties have stipulated that petitioner filed his application for extension of time to file his 1999 return "On or about April 15, 2000". Apr. 15, 2000, was a Saturday. In Vines v. Commissioner, 126 T.C. 279, 282 (2006), the Court found as a fact that petitioner filed his application for extension on Apr. 17, 2000. For the sake of consistency and convenience, in this report we adhere to that finding, which is not inconsistent with the parties' stipulation.

losses from his securities trading business to offset ordinary income he had received as compensation for settling the class action lawsuit. The problem was that under generally applicable procedures, petitioner would have been required to have made the section 475(f) election by April 17, 2000, which he had not done.[3] Caplin & Drysdale advised petitioner that pursuant to section 301.9100-3, Proced. & Admin. Regs., he should qualify for an extension of time to make the section 475(f) election (section 9100 relief). In July 2000 Caplin & Drysdale, on petitioner's behalf, submitted to respondent a section 475(f) election along with a request for section 9100 relief. Respondent ultimately rejected this request.

On October 15, 2000, petitioner filed his 1999 Form 1040, U.S. Individual Income Tax Return. On this return petitioner reported tax liability of $7,080,007 and a balance due, after application of his $4,000 estimated tax payments, of $7,076,007. Petitioner submitted no payment with his return.

On or about November 13, 2000, respondent assessed the $7,080,007 tax liability reported on petitioner's 1999 return, as well as a $247,660 addition to tax for failure to timely pay, computed on the basis of 7 months of late payment from the original due date of April 17, 2000 (the FTP addition).

----

[3]For more detailed discussion of these provisions and their application to petitioner's circumstances, see Vines v. Commissioner, supra at 287-289.

On November 13, 2000, December 18, 2000, and January 22, 2001, respectively, respondent issued first, second, and third notices and demands for payment of petitioner's 1999 tax.[4] On October 2, 2002, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing (the notice of intent to levy) in connection with his unpaid income tax liability for 1999. Petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing. The only issue raised in this hearing request was a challenge "to the existence or amount of the Taxpayer's underlying tax liability for taxable year ending December 31, 1999, based on a net operating loss (NOL) carryback from taxable year 2001, arising out of Taxpayer's securities trading business."

During a face-to-face hearing on or about March 20, 2003, petitioner requested abatement of the FTP addition. Petitioner provided the Appeals officer copies of his financial statements but did not submit any Form 656, Offer in Compromise.

By Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (the notice of determination), dated January 15, 2004, respondent's Appeals Office disallowed any abatement of the underlying income tax liability, including

---

[4]On or about Nov. 26, 2001, respondent recorded a $4,030,143 abatement of petitioner's 1999 income tax liability on the basis of a tentative net operating loss (NOL) carryback from his 2000 taxable year. On or about Feb. 10, 2003, respondent recorded a $2,544,847 abatement of petitioner's 1999 income tax liability on the basis of a tentative NOL carryback from 2001.

the FTP addition, for 1999.[5]  In the notice of determination the
Appeals officer concluded that petitioner lacked reasonable cause
for failing to pay the tax shown on his 1999 return.  The notice
of determination states that the Appeals officer had determined,
on the basis of a review of petitioner's bank accounts, that
around the time his 1999 income tax was due in April 2000
petitioner had liquid assets of about $2.7 million and real
property valued at about $4.8 million.  The notice of
determination further notes that according to financial
information furnished by petitioner's representative, at the time
of the Appeals Office hearing petitioner had net assets valued at
$5,025,887.  The notice of determination states:

> Your representative stated that you didn't want to
> discuss collection alternatives at this time.  He
> stated that you can pay the net balance due if the
> failure to pay penalty is abated in full.  The Appeals
> Officer cannot recommend abatement of the entire
> failure to pay penalty.

In the notice of determination respondent sustained the proposed
collection action.

The petition disputes petitioner's 1999 underlying liability
by asserting entitlement to NOL carrybacks and by challenging the

---

[5]The notice of determination noted that respondent had
assessed $247,660 as an addition to tax pursuant to sec.
6651(a)(2) and that another $602,924 of the addition to tax had
been accrued but not assessed.

FTP addition.[6]  The petition does not assign error to any failure by the Appeals officer to consider collection alternatives.

On or about July 9, 2004, respondent mailed to petitioner a notice of deficiency for taxable years 1999 and 2000 in connection with petitioner's request for section 9100 relief and his claim for carryback losses.  On July 19, 2004, petitioner petitioned this Court, disputing the deficiencies.  The parties agreed that the deficiency case should proceed before this collection case.  In Vines v. Commissioner, 126 T.C. 279 (2006) (the deficiency case), this Court held that petitioner was entitled to section 9100 relief enabling him to claim the benefits of section 475(f) for taxable year 2000 as if he had timely filed the election.  This decision resulted in an NOL carryback to petitioner's 1999 taxable year, which diminished but did not fully satisfy his outstanding 1999 tax liability.[7]

OPINION

A.  Legal Framework

Section 6330 requires the Secretary to furnish a person notice and opportunity for a hearing before making a levy on the person's property.  At the hearing, the person may raise any

---

[6]The petition also asserts a claim for abatement of interest.  The parties have stipulated that petitioner is not entitled to abatement of interest for taxable year 1999.

[7]After the deficiency case was decided, petitioner made additional payments further reducing but not eliminating his outstanding 1999 liability.

relevant issue relating to the unpaid tax or proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. The person may challenge the existence or amount of the underlying tax liability for any period only if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000). Once the Commissioner's Appeals Office issues a notice of determination, the person may seek judicial review in this Court. Sec. 6330(d)(1). If the validity of the underlying tax liability is properly at issue, we review that issue de novo. Sego v. Commissioner, supra at 609-610. Other issues we review for abuse of discretion. Id.

B.  Petitioner's Challenge to the FTP Addition

In this collection proceeding, the parties no longer dispute petitioner's underlying liability, except for the FTP addition. We review de novo whether petitioner is liable for the FTP addition. See Downing v. Commissioner, 118 T.C. 22, 29 (2002).

1.  Whether Petitioner's Liability for the FTP Addition Is Res Judicata

Respondent contends that in the wake of the decision in the deficiency case petitioner is precluded by the doctrine of res judicata from challenging the FTP addition. Neither party raised the issue of the FTP addition in the deficiency proceeding, which

is unsurprising given that the FTP addition was not addressed in the notice of deficiency.  Respondent asserts, however, that petitioner could have raised this issue in the deficiency proceeding and is therefore barred from raising it in this collection proceeding.  We disagree.

Under the general rule of res judicata:

> when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." * * *  [Commissioner v. Sunnen, 333 U.S. 591, 597 (1948) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877)).]

When petitioner filed his petition in the deficiency case, the Tax Court acquired jurisdiction "in respect of the deficiency that is the subject of such petition."  Sec. 6213(a).  As respondent acknowledges on brief:  "The only FTP addition at issue in this CDP case is the nondeficiency FTP addition for 1999 that was assessed based on the petitioner's self-reported tax liability on his original return."  Pursuant to section 6665(b), respondent's summary assessment of the section 6651(a)(2) addition to tax, computed by reference to the tax petitioner showed on his 1999 return, was not attributable to a deficiency as defined in section 6211 and was not subject to the deficiency procedures.  See Meyer v. Commissioner, 97 T.C. 555, 559-560 (1991).  Consequently, in the deficiency case this Court never

acquired jurisdiction over the FTP addition.  See id.; see also Estate of Forgey v. Commissioner, 115 T.C. 142, 146-147 (2000); Estate of Scarangella v. Commissioner, 60 T.C. 184 (1973); Newby's Plastering, Inc. v. Commissioner, T.C. Memo. 1998-320; Robertson v. Commissioner, T.C. Memo. 1983-32.  Because the FTP addition was not raised and could not have been raised in the deficiency case, the doctrine of res judicata does not preclude petitioner from raising the issue in this collection case.

2.    Whether Petitioner Has Shown Reasonable Cause for Failure To Pay

Pursuant to section 6651(a)(2), an addition to tax is imposed for failure to pay the amount shown as tax on the taxpayer's return on or before the date prescribed for payment of the tax (determined with regard to any extension of time for payment).  The addition is calculated as 0.5 percent of the amount shown as tax on the tax return but not paid, with an additional 0.5 percent for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25 percent. Id.

Petitioner's 1999 return, filed October 15, 2000, showed a tax liability of $7,080,007 and a balance due of $7,076,007, which he failed to pay.  Petitioner's extensions of time to file his 1999 return did not operate to extend the April 17, 2000,

deadline for paying the tax.[8]  See sec. 1.6081-4(b), Income Tax Regs.  Consequently, the tax was due on April 17, 2000, and the FTP addition runs from that date with respect to petitioner's then-unpaid balance of $7,076,007.  On the basis of the tax shown on petitioner's 1999 return, on or about November 13, 2000, respondent assessed the FTP addition for 7 months of late payment.[9]

The addition to tax for failure to pay does not apply if the taxpayer shows that the failure was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(2); see Higbee v. Commissioner, 116 T.C. 438, 447 (2001).  Because petitioner did not pay on April 17, 2000, at least 90 percent of the tax shown on his 1999 income tax return, the automatic extension of time for filing did not give rise to reasonable cause for his failure to pay.  See sec. 301.6651-1(c)(3), Proced. & Admin. Regs. Moreover, for the reasons discussed below, petitioner has not otherwise shown that he had reasonable cause for failing to pay his 1999 tax by the April 17, 2000, due date.

The regulations provide:

A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary

---

[8]Insofar as the record shows, petitioner neither applied for nor was granted any extension for paying the tax.

[9]The record does not indicate that respondent has ever assessed any additional amount of the sec. 6651(a)(2) addition to tax with respect to petitioner's 1999 tax.

business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship (as described in § 1.6161-1(b) of this chapter) if he paid on the due date.  In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation * * *  Further, a taxpayer who invests funds in speculative or illiquid assets has not exercised ordinary business care and prudence in providing for the payment of his tax liability unless, at the time of the investment, the remainder of the taxpayer's assets and estimated income will be sufficient to pay his tax or it can be reasonably foreseen that the speculative or illiquid investment made by the taxpayer can be utilized (by sale or as security for a loan) to realize sufficient funds to satisfy the tax liability.  A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.  [Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.]

Although he is not a tax specialist, petitioner is a very intelligent, sophisticated, and successful attorney and businessman.  He knew or should have known that he would owe significant income tax on the millions he received for settling the class action suit.  Having consciously chosen to make minimal estimated tax payments of $1,000 per quarter, he was undoubtedly aware that no later than April 17, 2000, he would need to have available significant funds to pay his 1999 income tax.  By March 2000 at the latest, he had been advised that his 1999 Federal income tax would be about $7 million.  At that time he could have

easily covered this tax liability with his existing assets, which included about $32 million in his margin account.

Petitioner's margin account investments had proven highly volatile, with a rapid runup in value within the space of a few weeks. Within a few more weeks they would prove even more volatile with a meteoric drop in value. The record does not reveal with specificity the characteristics of petitioner's margin account investments that might account for their extreme volatility.[10] In the light of this demonstrated volatility, however, it appears to us that these investments were inherently speculative. On this record, we are unable to conclude that petitioner exercised reasonable business care and prudence to conserve sufficient assets to pay his 1999 Federal income tax.

Petitioner contends that he meets the standard for reasonable cause under the regulations because he exercised ordinary business care and prudence by following the advice of highly qualified lawyers and accountants. In particular, he contends that his attorneys advised him "to wait until the final amount of the liability was determined, and then to plan to address the liabilities with his then available resources."

_____

[10]Petitioner's testimony suggests that the fluctuations in his margin account were attributable partly to market conditions but more directly to characteristics of the margin account. He testified: "Sometimes my market would be up and I still would get one of those margin calls and I didn't know why, but it was not because there wasn't money, it was because I didn't have a proper balance."

According to his testimony, however, petitioner received this advice in conversations with his attorneys that took place in the "fall of 2000 and on over into 2001." Such advice cannot constitute reasonable cause for petitioner's failure to pay his 1999 tax on the April 17, 2000, due date. Moreover, any such advice is of doubtful relevance to petitioner's ongoing failure to pay his 1999 tax, especially considering that the FTP addition at issue in this collection proceeding represents assessed amounts accrued for only 7 months after April 17, 2000.

Moreover, the record suggests that as of April 17, 2000, notwithstanding his market losses, petitioner still had assets that he could have used to pay at least a significant part of his 1999 tax. For instance, according to his own testimony he still had about $2 million of his original market investment. The record also strongly suggests that he owned significant real estate, as the Appeals officer found. Petitioner has not explained convincingly why he failed to use these assets to pay at least part of his 1999 tax and has not otherwise established with specificity the extent to which he was unable on April 17, 2000, to pay his 1999 tax.

In sum, petitioner has failed to show reasonable cause for failing to pay his 1999 tax by the April 17, 2000, due date.

C.   Penalty Computation

Alternatively, petitioner contends that the FTP addition should have been computed on the basis of his 1999 Federal income tax liability after taking into account the NOL carrybacks from 2000 and 2001.  We disagree.

The addition to tax for failure to pay is generally calculated by reference to the "amount shown as tax" on the return.  Sec. 6651(a)(2).  The amount of tax shown on petitioner's 1999 tax return, filed October 15, 2000, did not reflect any NOL carryback.

Pursuant to section 6651(c)(2), if the amount required to be shown as tax on the return is less than the amount actually shown on the return, the addition to tax is calculated by reference to the lesser amount.  This provision provides petitioner no relief, because the NOL carrybacks that petitioner claimed after filing his 1999 return did not affect the tax required to be shown on his 1999 return.  See sec. 1.172-1(d), Income Tax Regs. (providing that an NOL carryback that is not ascertainable when the return is due does not affect the tax required to be shown on the return but instead may give rise to a claim for credit or refund of overpayment); see also Willingham v. United States, 289 F.2d 283, 287 (5th Cir. 1961) (stating that a net operating loss carryback may "operate retrospectively to reduce or extinguish a tax previously due" but "'does not relieve the taxpayer of the

obligation to pay the tax in full when it falls due, and can not be interpreted as deferring taxpayer's duty to pay the tax promptly'" (quoting Simon v. Commissioner, 248 F.2d 869, 877 (8th Cir. 1957), revg. U.S. Packing Co. v. Commissioner, T.C. Memo. 1955-194)); Rictor v. Commissioner, 26 T.C. 913, 914-915 (1956); C.V.L. Corp. v. Commissioner, 17 T.C. 812 (1951); Blanton Coal Co., Inc. v. Commissioner, T.C. Memo. 1984-397.

Pursuant to section 6651(b)(2), for purposes of computing the addition to tax for failure to pay for any month, the amount of tax shown on the return is reduced by the amount of any part of the tax paid before the beginning of the month and by the amount of any credit against the tax which may be claimed on the return. This provision also provides petitioner no relief. Although petitioner made certain payments on his 1999 tax after filing his 1999 return and respondent made certain abatements of petitioner's 1999 tax on the basis of tentative NOL carrybacks from petitioner's 2000 and 2001 taxable years, these payments and abatements occurred long after November 2000, which is the last month for which the assessed FTP addition at issue in this proceeding was accrued. Petitioner has failed to show any error in respondent's computation of the FTP addition.

D.  Collection Alternatives

Petitioner argues for the first time on brief that the Appeals officer abused her discretion in failing to provide any

collection alternative.  The record does not show that petitioner ever proposed any collection alternative to the Appeals officer. Nor does petitioner expressly dispute the statement in the notice of determination that "you didn't want to discuss collection alternatives" during the Appeals Office hearing.  Instead, petitioner suggests that he was in no position to offer a collection alternative to the Appeals officer because the extent of his "actual liability" had not yet been conclusively established.

Petitioner did not raise these issues in the assignments of error in his petition.  Pursuant to Rule 331(b)(4), these issues are deemed conceded.  In any event, petitioner's belated assignments of error in this regard are without merit.  Section 6330 contemplates that the taxpayer should raise at the collection hearing relevant issues, including collection alternatives, for the Appeals officer's consideration; it does not require the Appeals officer to engage in continuous negotiation.  Chandler v. Commissioner, T.C. Memo. 2004-7; see also Bruce v. Commissioner, T.C. Memo. 2007-161; Crisan v. Commissioner, T.C. Memo. 2003-318.  The Appeals officer did not abuse her discretion by not considering collection alternatives that petitioner had not raised and did not wish to discuss.

To reflect the foregoing,

Decision will be entered

for respondent.