T.C. Memo. 2009-35

UNITED STATES TAX COURT

PATRICK T. AND LEANNE S. FUREY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13459-06.                    Filed February 12, 2009.

Patrick T. and Leanne S. Furey, pro sese.

David L. Zoss, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  Respondent determined $14,310, $7,089, and
$31,872 deficiencies in petitioners' respective Federal income
taxes for 2002, 2003, and 2004.

The two primary issues for decision are whether petitioners
have substantiated claimed partnership income, losses, and
expenses and whether securities trading losses that petitioners

reported on their Federal income tax returns as capital losses may now be treated as ordinary losses.

Unless otherwise indicated, all section references are to the Internal Revenue Code applicable to the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Many of the circumstances in this case are vague and unclear.

At the time the petition was filed, petitioners resided in Minnesota.

On their 2002, 2003, and 2004 joint Federal income tax returns petitioners reported taxable income and taxes paid and claimed tax overpayments, as follows:

|  | Year | | |
|  | 2002 | 2003 | 2004 |
| Taxable income | -0- | -0- | $95,732 |
| Taxes due | -0- | -0- | 21,470 |
| Taxes paid | $18,226 | $18,067 | 53,028 |
| Overpayment | 18,226 | 18,067 | 31,558 |

Upon receipt respondent processed petitioners' Federal income tax returns and refunded to petitioners the claimed tax overpayments.

During respondent's audit of petitioners' 2002, 2003, and 2004 Federal income tax returns, Patrick T. Furey (petitioner),

informally provided respondent's revenue agent what appeared to be partially amended 2002, 2003, and 2004 joint Federal income tax returns (amended tax returns). The amended tax returns were not signed by petitioners, were undated, and were not filed with respondent.

Petitioners' filed tax returns and the amended tax returns were prepared by a retired accountant (preparer) whose title was shown on petitioners' tax returns as "C.P.A." despite the fact that his C.P.A. license had expired.

On petitioners' filed tax return for each year, petitioner's occupation is reported as "corporate executive". On the amended tax returns petitioner's occupation is shown as "trader in securities".

Harmony Malting

On their 2002 and 2003 filed joint Federal income tax returns petitioners reported income, capital gains, losses, and expenses relating to petitioner's alleged interest in a partnership by the name of Harmony Malting (HM), as follows:

| | Year | |
| Harmony | 2002 | 2003 |
| --- | --- | --- |
| Interest income | --- | $922 |
| Ordinary dividends | --- | 5,859 |
| Net long-term capital gain | $30,201 | --- |
| Net sec. 1231 gain | 35,896 | --- |
| Sec. 179 expense | (163) | (754) |
| Nonpassive ordinary loss | (173,260) | (158,303) |

Petitioner claims that an individual by the name of Robert Saterdalen was his partner in HM. Petitioner claims that in 2003 Mr. Saterdalen disappeared and HM went out of business. Petitioner explains that if Mr. Saterdalen is not someday found he (petitioner) might be liable for the debts of HM approximating $510,000. Although it is not completely clear, petitioner's claimed losses relating to HM apparently are based on this alleged speculative liability.

Petitioner's tax return preparer claims that he prepared for HM 2002 and 2003 informational Forms 1065, U.S. Return of Partnership Income, showing that petitioner had an interest in HM. The preparer, however, acknowledges that these Forms 1065 were never filed with respondent, and the preparer explained at trial that if respondent wanted the Forms 1065 filed, respondent should have asked him to do so.

Copies of the alleged Forms 1065 that the preparer submitted to respondent during respondent's audit show identification numbers for HM that were either nonexistent numbers or that were assigned to other taxpayers, and respondent has no record of the existence of HM. HM did not file with respondent Federal income tax returns for the years in issue.

On audit, for lack of substantiation respondent removed from the computation of petitioners' taxable income for 2002 and 2003

the above reported income, section 179 expense, and nonpassive ordinary loss items relating to HM.

Becker Sunset Farms

On their 2002, 2003, and 2004 filed joint Federal income tax returns, petitioners reported income, section 179 expenses, and nonpassive ordinary losses relating to petitioner's alleged partnership or corporate interest in an entity named Becker Sunset Farms (BSF), as follows:

| BSF Item Claimed | Year | | |
| by Petitioner | 2002 | 2003 | 2004 |
| --- | --- | --- | --- |
| Interest income | --- | $2,512 | --- |
| Nonpassive ordinary income | $15,363 | 18,512 | --- |
| Sec. 179 expense | (982) | (1,052) | --- |
| Nonpassive ordinary loss | --- | --- | ($56,311) |

A company by the name of BSF that operated a game farm was licensed to do business in Minnesota in the 1990s, but that company was dissolved in 1999.  No credible evidence in the record substantiates that BSF existed in any form during 2002, 2003, and 2004 and that petitioner had any ownership interest therein.

Neither the State of Minnesota nor respondent has any record during 2002, 2003, and 2004 of the existence of BSF, and BSF did not file with respondent Federal income tax returns for those years.

On audit, for lack of substantiation respondent removed from the computation of petitioners' taxable income for 2002, 2003, and 2004 the above reported income, section 179 expense, and nonpassive ordinary loss items relating to BSF.

Securities Trading Activity

Over the years petitioner invested frequently in the stock market for his own account (securities trading activity).

On each of petitioners' 2002, 2003, and 2004 filed Federal income tax returns, petitioner's securities trading activity was treated as an investment, nonbusiness activity. Petitioners did not claim any deductions that on the tax returns were identified as related to petitioner's securities trading activity, and petitioners attached to each of their tax returns a Schedule D, Capital Gains and Losses, relating to petitioner's securities trading activity and reported thereon capital gains and losses, as follows:

| Capital Gains and Losses | | |
|:---:|:---:|:---:|
| 2002 | 2003 | 2004 |
| ($214,608) | $23,780 | $28,345 |

Petitioner did not conduct securities trades for others. Petitioner never made a timely and proper election under section 475(f) to use the mark-to-market method of accounting with regard to his securities trading activity.

However, attached to petitioners' 2002, 2003, and 2004 amended joint Federal income tax returns were Schedules C, Profit or Loss from Business, on which petitioner reported different total amounts for his securities trading gains and losses and on which petitioner changed the character thereof from capital to ordinary, as follows:

| Ordinary Gains and Losses | | |
| --- | --- | --- |
| 2002 | 2003 | 2004 |
| ($102,385) | ($1,430) | $27,609 |

In connection with the trial, petitioners continue to assert the business nature of petitioner's securities trading activity and for 2002 petitioners again revise the total ordinary losses claimed relating thereto (namely for 2002 $121,201).

On audit, respondent treated petitioner's securities trading activity as a nonbusiness investment activity and petitioner's gains and losses as capital gains and losses. Also relating thereto, respondent determined that for 2002 petitioner failed to report $30,901 of short-term capital gains and that petitioner was entitled to annual capital losses for 2002, 2003, and 2004 of $3,000, to short-term capital loss carryovers (from 2002 to 2003--$246,804, from 2003 to 2004--$220,024, and from 2004 to 2005--$186,865), and to a long-term capital loss carryforward from 2004 to 2005 of $7,000.

At trial petitioners claimed yet different amounts for the ordinary net losses petitioner allegedly realized in his securities trading activity for each year in issue.  Petitioners also now claim cost of goods sold deductions relating to petitioner's securities trading activity.

In the notice of deficiency respondent made a number of other adjustments to petitioners' 2002, 2003, and 2004 Federal income tax returns.  Petitioners have offered evidence regarding only the HM and BSF losses and the securities trading activity set forth above.

Before trial, petitioners did not answer respondent's interrogatories, and petitioners did not file a pretrial memorandum.

At trial, petitioners did not testify, and petitioners called as their only witness their preparer.

OPINION

Generally, respondent's determinations are presumed correct, and petitioners bear the burden of proving that the adjustments set forth in respondent's notice of deficiency were erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners make no claim nor showing that under section 7491(a) any shift in the burden of proof should occur.

As has been said repeatedly, deductions are a matter of legislative grace.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79,

84 (1992). Taxpayers are expected to maintain books and records and to substantiate claimed deductions with credible source documentation such as invoices and receipts and books and records.

In order to deduct partnership losses, a partner must establish his basis in the partnership. Sec. 704(d). Further, an individual partner may deduct partnership losses only to the extent he is at risk, sec. 465, and passive partnership losses are deductible only to the extent of passive partnership income, sec. 469.

Under section 1221, the term "capital assets" includes all assets other than assets expressly excluded. Dealers in securities who sell to customers may recognize ordinary income or ordinary loss on their securities trading activity. Dealers' securities are considered to be inventory held for sale to customers. Sec. 1221(a)(1). Apart from dealers, however, only traders in securities whose trading activity rises to the level of a trade or business and who make a valid election under section 475(f) are entitled to treat gains and losses from the sale of securities as ordinary. See generally United States v. Diamond, 788 F.2d 1025, 1028-1030 (4th Cir. 1986); Vines v. Commissioner, 126 T.C. 279, 288 (2006).

As is apparent, the testimonial and documentary evidence in this case is incomplete and lacking in credibility. Petitioners'

evidence relating to HM and to BSF--their existence, their business activity, their income and expenses, their books and records, the partners therein--is highly suspect and completely inadequate.

Petitioners offer implausible explanations and evidence relating to the losses and expenses in question. For example, petitioner states that he has HM documents in his possession at home but that he could not produce them at trial because he simply left them at home. Petitioner's explanation does not begin to explain why petitioner, if he actually had such documents, never produced them to respondent's revenue agent or to respondent's trial counsel before the trial.

Petitioner has not adequately established, for the years in issue, the existence of HM and BSF as partnerships or otherwise and what losses, if any, petitioner is entitled to relating to HM and BSF.

We sustain each of respondent's adjustments relating to HM and BSF.

With regard to his securities trading activity, petitioner contends that during 2002, 2003, and 2004 his securities trading activity was so frequent and extensive that it qualifies as a trade or business and that the ordinary losses shown on the Schedules C attached to the unsigned partial amended tax returns should be allowed.

Respondent contends that petitioner's claimed securities trading ordinary losses should be disallowed because petitioner's securities trading activity did not rise to the level of a trade or business, because the losses are not substantiated, and because petitioner did not make a section 475(f) election with regard thereto.

For all of respondent's reasons, we sustain respondent's adjustments relating to petitioner's securities trading activity. Petitioner has not established that his activity was anything other than a nonbusiness investment activity with respect to which petitioner realized only capital gains and losses.

Respondent's other adjustments are sustained for lack of proof. See Rule 149(b). Petitioners' failure to call corroborating witnesses and failure to produce at trial documentation that is purportedly in their possession is particularly troubling, and we assume that such evidence, if produced, would not be favorable to petitioners. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Further, we deny any claims for refund made by petitioners other than those allowed by respondent.

For the reasons stated,

<u>Decision will be
entered under Rule 155</u>.